Filed 12/8/20  In re M.D. CA2/2

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re M.D. et al., Persons Coming Under the Juvenile Court Law. | B302466 (Los Angeles County Super. Ct. No. 19CCJP06052) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>M.G.,<br><br>        Defendant and Appellant. | MODIFICATION ORDER (No Change in Judgment) |

THE COURT:

It is ordered that the opinion filed herein on December 4, 2020, be modified in the following particular:

On the first page, at the line just before the caption In re M.D. et al., the words "DIVISION ONE" are changed to "DIVISION TWO," so the line reads:

DIVISION TWO

There is no change in the judgment.


LUI, P.J.          CHAVEZ, J.          HOFFSTADT, J.

Filed 12/4/20  In re M.D. CA2/1 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re M.D. et al., Persons Coming Under the Juvenile Court Law. | B302466 (Los Angeles County Super. Ct. No. 19CCJP06052) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>M.G.,<br><br>    Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Nichelle L. Blackwell, Judge Pro Tempore.

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Council, Kim Nemoy, Assistant County Counsel, and Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

_____

Appellant M.G. (Mother) concedes that the juvenile court properly exercised dependency jurisdiction over Mother's preteen daughter, who was molested by Mother's live-in boyfriend. (Welf. & Inst. Code, § 300, subd. (d).)[1]  Substantial evidence supports the court's finding that Mother's refusal to protect her daughter placed the child's siblings at substantial risk of serious physical harm or sexual abuse. (*Id.*, subds. (b), (j).)  We affirm.

## FACTS AND PROCEDURAL HISTORY
### *Juvenile Dependency Prior History*

Mother's children are M.D. (born in 2003); K.D. (2007); A.D. (2008); and A.D., Jr. (2011).  The family's contacts with respondent Department of Children and Family Services (DCFS) began in 2010 when Mother was hospitalized with suicidal thoughts; she said she was verbally abused in front of the children by their father A.D., Sr. (Father).[2]  The report was deemed unfounded.  DCFS received multiple reports in 2015

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] Father is not a party to this appeal.  We recognize that M.D. has taken a new name while transitioning genders.  For consistency, we use the name designated in the record.

2

relating to domestic violence (including Father's attempt to strangle Mother), Mother's suicide attempts, and child neglect.

The court sustained a petition in October 2015, finding that Father engaged in domestic violence against Mother by kicking, punching, slapping, suffocating, dragging her by the hair, and injuring her in the children's presence; his drug abuse rendered him incapable of regularly caring for his children. The case ended in 2016, with an order granting Mother sole legal and physical custody of the children.

A second petition was sustained in 2017. The court found that the parents created a detrimental home environment by engaging in mutual combat, placing the children at risk of harm. Mother attacked Father with a wrench and brandished a knife; Father strangled Mother and struck her head. Mother's mental and emotional problems resulted in involuntary hospitalizations, and Father's drug abuse prevents him from regularly caring for the children. The second case was closed in March 2019 after Mother completed services, slowly reunified with the children, and took sole custody of them.

### The Current Petition

In September 2019, DCFS received a report of sexual abuse at the family home by Mother's live-in boyfriend, Armando G. When the social worker arrived, Armando was at Mother's home tending to the minors while Mother was away. The social worker interviewed A.D., then 11 years old, who denied that anyone touched her private parts.

M.D., age 16, denied being sexually abused. He was aware of A.D.'s disclosure to a paternal aunt that Armando touched her private parts. M.D. was unsure whether to believe his sister. He did not speak to A.D. about the abuse "due to fear of DCFS

3

involvement." A.D., Jr., age eight, denied that anyone touched his private parts. K.D., age 12, was present when A.D. disclosed that Armando touched her private parts. K.D. said she does not talk to Armando because "we've never had a good connection" but denied that a drunken Armando grabbed her leg.

Mother knew of the accusations against Armando. She did not believe A.D. was molested, opining that paternal relatives "brainwashed" A.D. to falsely accuse Armando. The sexual abuse was brought to Mother's attention four months earlier.

While the social worker interviewed Mother's family, law enforcement arrived. A.D. told a deputy sheriff that Armando "touched her breasts and vagina area over her clothes during the last year. . . . [A.D.] said she told Mother about this incident [and] Mother told her that she would talk to [Armando] about it. . . . [A.D.] said Mother told her to lie to [law enforcement] when they responded to a similar call two weeks ago, which is why [A.D.] did not say anything." Officers intended to arrest Armando for sexual acts with a minor and take the children into protective custody because Mother failed to protect them from Armando.

The social worker confronted Mother about A.D.'s statement to the deputy sheriff. "Mother said the allegations were false and denied [Armando] sexually abused [A.D.] in any way." Mother repeated her claim that A.D. was brainwashed by paternal relatives.

Father arrived while DCFS was formulating a plan for the children. Though A.D. did not tell him about the molestation, he believes her because "she wouldn't lie about something like this." He does not have custody of the children because he did not comply with court orders in the second dependency case.

4

The social worker assessed the safety of Mother's home, which was "very messy, cluttered and dirty." A bedroom shared by A.D. and A.D., Jr., had "dog feces on the beds, dog urine on the floor, trash and piles of clothes on the floor."

One day after meeting with the family, the social worker went to A.D.'s school to re-interview A.D. A.D. first said she lied to law enforcement about sexual abuse; however, when the social worker emphasized the importance of telling the truth, A.D. admitted that Armando touched her breasts and vagina one night before Christmas 2018. A.D. told Mother, who "said she would talk to Armando."

The social worker met with Mother after Armando was released from jail. Mother said that no criminal charges would be pursued because there was not enough evidence against Armando. Mother repeated that A.D. "is being brainwashed by paternal family, which is why she is making up false allegations." Mother plans to allow Armando to remain in the home because Mother does not believe anything happened and said A.D. was "lying because [Armando] was never alone with her." When the social worker noted that A.D. "confirmed the allegations" and it appeared Mother was failing to protect the children, Mother accused the social worker of lying about A.D.'s statements.

A paternal aunt told the social worker that three weeks earlier A.D. said "out of nowhere" that Armando touched her vagina beneath her underwear and her breasts over her shirt. A.D. feared Mother would be mad at her. K.D. volunteered that she "feels uncomfortable around [Armando] because there was a time he was drunk and grabbed her leg, so [K.D.] got up and walked away." Mother observed the incident; when K.D. said Armando made her uncomfortable, Mother replied that the

5

minors are "ungrateful." Father did not want the paternal aunt to call police, to avoid DCFS involvement. Nevertheless, the aunt reported the abuse because A.D. "appeared scared" and the aunt feels the children are not safe with Mother or Father.

DCFS filed a petition alleging that Mother knew Armando sexually abused A.D. by fondling her breast and vagina; Mother failed to protect A.D. by allowing Armando to reside with and have unlimited access to the child, and told A.D to lie to law enforcement and DCFS. Mother's conduct endangers A.D.'s physical health and safety and places the child's siblings at risk of serious physical harm and sexual abuse. The petition further alleged that Father's history of abusing marijuana and methamphetamine renders him incapable of providing regular care and supervision of the children, who were prior dependents of the court due to Father's drug abuse. The children were placed with their maternal uncle.

The parents denied the allegations and asked that the children be released to them at the detention hearing. The children wanted to be with their parents; however, their attorney advocated for detention because Mother is more concerned about proving Armando's innocence than protecting A.D. Counsel noted that Mother instructed A.D. to lie about the molestation.

The court found a prima facie case for detaining the children and removed them from parental custody. The court found it "striking and stunning" that Mother "believes her own child lied" and was "more interested in exonerating her boyfriend than in really trying to find out what is going on with her child [A.D.]" The parents were given monitored visitation. Mother was ordered to enroll in a parenting class, individual counseling, and a sexual abuse awareness class. The court ordered "no

contact" between the children and Armando and for both parents "to eliminate discussing this case with the children."

DCFS submitted a jurisdiction report in October 2019. In the report, M.D. described Armando as "a second dad" and expressed disbelief that he molested A.D. M.D. would be "sad" if Armando was not there. K.D. claimed she did not remember that Armando grabbed her leg. A.D. said she told Mother that Armando touched her but said "it was an accident." A.D. wants to live with Mother and would "feel okay" if Armando was there because he helps with homework and makes food when Mother is busy. A.D., Jr., knew he was removed from parental care "because they think Armando is touching [A.D.'s] private parts, but he is not. And he went to jail."

Mother continued to deny that Armando molested A.D. She blames "paternal relatives who do not want for her to be happy. Further, she feels the timing of the allegations occurred just as she was filing for a divorce from the father." Mother accused A.D. of switching stories because the child initially said she was touched on the breast in the third grade, then said it happened in fourth grade. Mother observed that A.D. "acted normal as if nothing was wrong," asking Armando to go to the dog park, help with homework, and make food. When asked how she reacted when A.D. disclosed abuse to her, Mother replied that it "did not happen" so she never spoke to Armando about touching A.D. Mother opined that A.D. was "manipulated" by paternal relatives, who are vengeful because Father went to jail for domestic violence against Mother. Mother claimed Armando no longer lives with her and she has ended their relationship.

Father stated that he completed court-ordered programs and drug testing in his prior dependency case but did not file the

certificates of completion with the court or seek reunification. He reported seeing Mother and Armando together a week earlier. Father said A.D. "blurted out Armando had touched her" during a visit with paternal relatives. Father's sister confirmed that A.D. said, "Armando touches me," but M.D. "shut it down. He didn't want [A.D.] to say anything." A.D. later told her aunt that Armando touched her under her shirt and under her underwear.

The children's maternal uncle stated that he asked the children as a group what happened, but there was no response. Later, he asked A.D. alone. He recounted, "While she was telling the story, there was no emotions, she didn't give eye contact; she didn't seem to be credible, but I do take all accusations seriously."

The older children knew Father had a drug problem and failed to reunify with them because of substance abuse. M.D. knew Father used "weed"; Mother told M.D. that Father was aggressive because he used methamphetamine. K.D. said that Father got "easily mad" when he used drugs. Father stated that he has been sober since 2017 and no longer uses marijuana or methamphetamine. He offered to undergo drug testing.

DCFS categorized the children as being at "very high" risk for future abuse and neglect. Mother does not believe her child was sexually abused by her boyfriend. She is not able to protect her children by placing their needs over her own and is more interested in clearing her boyfriend's name than determining why A.D. spontaneously disclosed sexual abuse. Father is currently unable to safely care for the children.

The jurisdiction hearing was held on November 7, 2019. M.D. testified that he was present with his siblings, paternal aunts, and grandmother when A.D. disclosed sexual abuse by Armando. M.D. did not want to listen to the conversation

because he knew they were going to say Mother is "a bad mom." After A.D. made the disclosure, paternal relatives spoke to her privately; M.D. believes they convinced A.D. to accuse Armando. M.D. initially believed A.D. but then was unsure because A.D. told police it happened in the third grade, when Armando was not in their home, then said it happened in the fourth grade. M.D. stated that A.D. seemed happy to be with Armando.

Father testified that he completed all court-ordered programs in his prior dependency case, including a nine-month drug treatment program. He recently tested negative for drugs.

A.D. did not testify. Her attorney represented to the court that A.D. believes this case is "a mistake." Armando pulled a blanket onto her and "there was nothing more." A.D. feels safe with Mother and wants to live with her. Her siblings also asked to live with Mother. Mother asserted that A.D. was inconsistent in her sexual abuse allegations and was unduly influenced by paternal relatives. She urged the court to heed A.D.'s siblings, who were unsure if they believed A.D.

The court reviewed A.D.'s forensic examination, in which A.D. stated that Armando touched her "breasts and private" one night on the couch in the living room. She was "scared." Since that day, whenever Armando comes near her at night she moves so that he knows she is awake, to encourage him to "walk away." A.D. told Mother that Armando touched her and Mother said "she was going to take care of it."

A.D. feared Mother will go to jail because she knew about Armando's abuse but did not do anything about it. A.D. was scared "because we're going to go to court on Wednesday and then my mom might go to jail." During a visit one day earlier,

9

Armando told A.D. that he would leave Mother's home for "a while" if A.D. wanted.

### *The Court's Findings*

The court believed A.D. was touched on her breast and lower private parts by Armando. If A.D. was hesitant, it was because she worried Mother might go to jail. Though A.D. recanted, the court said, "I don't believe [the abuse] was an accident." It cited the forensic video in which A.D. described exactly what happened and how she implemented protective measures to ensure it did not happen again, including making sure she is not asleep when Armando is around. The court discounted claims that A.D. was coached by paternal relatives.

The court sustained all counts against Mother, who "adamantly did not believe her child's statements. And she appeared to be more protective of Armando than of her children." It found DCFS did not meet its burden as to Father and dismissed the allegations against him. It declared the children dependents of the court. The court found by clear and convincing evidence that the children would be at risk of detriment if they remain in Mother's care or were released to Father. Mother was ordered to complete a sexual abuse awareness program, a parenting class, and individual counseling to address child safety and protection.

### DISCUSSION

Mother contests the court's exercise of jurisdiction.[3] On appeal, we uphold jurisdictional findings if they are supported by

---

[3] On August 31, 2020, we dismissed Mother's challenge to the disposition order after the juvenile court returned the children to her care.

substantial evidence.  We review the entire record, resolving all conflicts in favor of the respondent and drawing all reasonable inferences in support of the judgment.  (*In re R.T.* (2017) 3 Cal.5th 622, 633; *In re Israel T.* (2018) 30 Cal.App.5th 47, 51.)

Mother's opening brief states, "the juvenile court rightly sustained jurisdiction over [A.D.] pursuant to a theory of sexual abuse."  (§ 300, subd. (d).)  " '[A] reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence.' "  (*In re I.J.* (2013) 56 Cal.4th 766, 773.)  Because Mother concedes that substantial evidence supports the sexual abuse count, we " 'need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.' "  (*Ibid.*)

Sustained findings require "a substantial risk that the child will suffer serious[] physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child."  (§ 300, subd. (b)(1).)  Jurisdiction exists if there is a substantial risk that an abused child's siblings will be abused.  (*Id.,* subd. (j).)  This provision " 'accords the trial court greater latitude to exercise jurisdiction as to a child whose sibling has been found to have been abused than the court would have in the absence of that circumstance.' "  (*In re I.J., supra,* 56 Cal.4th at p. 774.)

"[A]berrant sexual behavior directed at one child in the household places other children in the household at risk."  (*Los Angeles County Dept. of Children & Family Services v. Superior Court* (2013) 215 Cal.App.4th 962, 970.)  Armando sexually abused A.D. and Mother did nothing when she learned of it.  He also pawed at K.D., though the child denied it once DCFS became involved.  When K.D. complained about Armando's behavior, Mother called her "ungrateful" and did nothing to protect K.D.

11

Regardless of gender, siblings can be harmed by knowing a parent has abused the trust of their sister, by the denials of a perpetrator living in the household, by parental acquiescence in the perpetrator's conduct, or by parental " 'efforts to embrace them in a web of denial.' " (*In re I.J., supra,* 56 Cal.4th at p. 776.)

Mother showed no interest in protecting her children. When A.D. disclosed Armando's sexual abuse, Mother falsely promised to do something about it, then urged A.D. to lie about the abuse—to law enforcement, to DCFS, and to the court. To frighten A.D. into recanting, the child was falsely told that Mother would be sent to jail at the dependency hearing.

Despite knowing that A.D. was abused, Mother told a deputy sheriff that "the allegations were false and denied [Armando] sexually abused [A.D.] in any way." However, A.D. confirmed to the social worker that Armando touched her breasts and vagina, and she disclosed this to Mother. When confronted with A.D.'s statements, Mother told the social worker that A.D. was "brainwashed" and "making up false allegations." She denied that A.D. ever disclosed the abuse to her. Mother's persistent denials justify court supervision. (*In re A.F.* (2016) 3 Cal.App.5th 283, 293.)

Mother intended to keep Armando at her home, saying A.D. was "lying because [Armando] was never alone with her." Mother's claim is demonstrably untrue: When DCFS first arrived to investigate sexual abuse, Armando was home alone with A.D. and A.D., Jr. Mother returned to the home while the social worker was interviewing the children.

The court could reasonably infer that Mother pressured her children to lie, to protect Armando. K.D. initially disclosed that Armando grabbed her leg while drunk; later, she pretended to not remember the event. When A.D. disclosed that "Armando touches me" to paternal relatives, M.D. "shut it down" to prevent

A.D. from saying anything. Away from her siblings, A.D. said Armando touched her under her shirt and underwear.

Although Mother claimed to have ended her relationship with Armando, the court did not have to credit her claim. Father saw her with Armando. More tellingly, A.D. revealed that the day before her forensic examination, Mother and Armando visited her; Armando told A.D. he would be willing to leave the family home temporarily if A.D. was uncomfortable.

Mother's decision to go behind the back of DCFS and the court to ask A.D. during a visit if Armando could remain in the family home—with unfettered access to the children—exemplifies Mother's refusal to protect her children. She ignored her child's request for protection and help. Instead, she kept a sexual predator in her home who threatens the safety of her children. Substantial evidence supports a finding that A.D.'s siblings were at risk of serious harm or abuse at the time of the jurisdiction hearing. Dependency jurisdiction over all four children is warranted to protect them from Mother and Armando.

## DISPOSITION

The jurisdiction/disposition order is affirmed.

NOT TO BE PUBLISHED.



LUI, P.J.

We concur:



CHAVEZ, J.



HOFFSTADT, J.

14