Filed 11/21/18; Certified for Publication 12/13/18 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re ISRAEL T. et al., Persons Coming Under the Juvenile Court Law. | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>VICENTE T.,<br><br>    Defendant and Appellant. | B286821<br>(Los Angeles County Super. Ct. Nos. DK23385, DK23385A, DK23385B) |

    APPEAL from an order of the Superior Court of Los Angeles County, Stanley Gensler, Judge. Reversed.

    Keiter Appellate Law and Mitchell Keiter, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary Wickham, County Counsel, Kristine P. Miles, Acting Assistant County Counsel and Veronica Randazzo, Deputy County Counsel, for Plaintiff and Respondent.

---

Appellant Vicente T. (Father), the father of Israel and Isabel T., appeals the juvenile court's jurisdictional order. The court asserted that the children fell under Welfare and Institutions Code section 300, subdivision (b), but found no substantial risk of serious harm to the children from the parents' actions, and at the dispositional phase, returned the children to the custody of the parents, finding that the parents did not constitute "any kind of risk to the children."[1] Father contends the court's findings do not support the assertion of jurisdiction. We agree and reverse the jurisdictional order.

## FACTUAL AND PROCEDURAL BACKGROUND

The family came to the attention of the Department of Children and Family Services (DCFS) on June 17, 2017. Officers from the Bell Gardens Police Department observed Father exchanging money for a Styrofoam cup at a fast food restaurant. Suspecting a drug transaction and observing

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2

Father commit several traffic violations as he drove away, police stopped him. Father exited his car and ran to his home. Mother came out of the home, took a cup from Father's car, and ingested something contained inside it. Father and Mother were arrested. Officers conducted a search of the family home, finding baggies with trace amounts of a substance believed to be cocaine on the floor, a small baggie containing an off-white crystal substance resembling cocaine or methamphetamine on a closet shelf, and a large zip-lock bag containing marijuana.[2] They informed DCFS, who detained Israel and Isabel, then five and three, and placed them with paternal relatives.

Interviewed by the caseworker, Father and Mother denied using or selling drugs. They claimed that any hard drugs found in the home were planted by the police officers, and that the marijuana belonged to Father's adult son, who had a medical marijuana card. The caseworker said they were cooperative and found them to be dedicated and consistent with respect to visitation. Father and Mother saw the children and assisted with their care every day, and continued to participate in their activities and school

_____

[2] One of the baggies was tested and found to contain .06 grams of methamphetamine. The DCFS detention report stated that the police recovered "a pound of cocaine and marijuana inside the child[ren]'s home." Nothing in the police report supports that contention. Neither Mother nor Father were charged with drug-related offenses.

programs. Their involvement was particularly important to Israel, who suffered from autism and required structure and a regular daily routine. In addition, Father and Mother volunteered to enroll in services, including parenting classes and drug testing.[3]

At the jurisdictional hearing, Father's adult son testified the marijuana found in the home was his. He said that he stored it in a box above his closet, out of the reach of his younger siblings, and that he generally locked his room when he left it. He further testified he did not use marijuana in the family's home or in the presence of his siblings. He denied observing Father or Mother use drugs of any kind.

Counsel for DCFS asked the court to find jurisdiction based on drugs being left within access to the children. Counsel for the children agreed that the presence of two baggies containing drug residue on the floor was sufficient to support jurisdiction. Counsel for Mother contended that the matter should be dismissed because DCFS failed to meet its burden of proof. Counsel for Father also argued that the matter should be dismissed for lack of sufficient evidence. Counsel began to argue that the court should consider Father's negative drug test and willingness to test further in

---

[3] Father tested negative for all substances in July 2017; Mother missed her scheduled test.

making its jurisdictional finding. The court interrupted her, saying: "[t]hose are dispo issues."

The court found true under section 300, subdivision (b) that there was "a . . . risk that the child[ren] will suffer . . . physical harm," and that Father and Mother "created an endangering home environment for the children in that trace amounts of methamphetamine were found in the children's home within access of the children." In making its findings, the court struck the word "substantial" before the word "risk," and struck the word "serious" before the word "physical harm." In doing so, the court stated: "I am amending [the petition] so it will invite reversal at the Court of Appeal."

Turning to disposition, the court noted that Father and Mother continued to care for the children and to meet their special needs, that there was "no evidence of abuse or neglect," and that Father and Mother had not been charged with any drug offenses. The court stated: "I don't believe these parents constitute any kind of risk to the children." The court proceeded under section 360, subdivision (b).[4] It

_____

[4] Section 360, subdivision (b) provides: "If the court finds that the child is a person described by Section 300, it may, without adjudicating the child a dependent child of the court, order that services be provided to keep the family together and place the child and the child's parent or guardian under the supervision of the social worker for a time period consistent with Section 301 . . . ." As explained in *In re Adam D.* (2010) 183 Cal.App.4th 1250, 1260: "'If the court agrees to or orders a

(*Fn. is continued on the next page.*)

ordered Father and Mother to participate in random drug testing for the next six months, to complete a parenting class, and to permit no illegal drugs or substances in their home.[5]  DCFS was authorized to make unannounced home calls to monitor the family and assist the parents.  The court released Israel and Isabel to the care of Father and Mother.  This appeal followed.

## DISCUSSION

A child may be adjudged a dependent of the court under subdivision (b) of section 300 if the "child has suffered,

---

program of informal supervision [under section 360, subdivision (b)], it does not dismiss the dependency petition or otherwise set it aside.  The true finding of jurisdiction remains.  It is only the dispositional alternative of declaring the child a dependent that is not made.'"  (Quoting Seiser & Kumli, Cal. Juvenile Courts Practices and Procedure (2009) § 2.124[2], pp. 2-283-2-284.)  A court's decision to proceed with informal supervision under section 360, subdivision (b) thus represents "a final judgment" and "an appealable order," permitting the parents to contest the underlying jurisdictional finding on appeal.  (*In re Adam D.*, *supra*, at p. 1261.)

[5]      Under section 360, subdivision (c), if during that time, the family is "unable or unwilling to cooperate with the services being provided [under subdivision (b)]," DCFS may file a new petition "alleging that a previous petition has been sustained and that disposition pursuant to subdivision (b) has been ineffective in ameliorating the situation requiring the child welfare services," and the court may hold a new disposition hearing.

6

or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left, or . . . by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness . . . ." (§ 300, subd. (b)(1).) A true finding under this subdivision requires evidence of "'''"serious physical harm or illness"''''" to the child, or "'''"a "substantial risk" of such harm or illness."'" [Citations.]'" (*In re D.L.* (2018) 22 Cal.App.5th 1142, 1146.) Proof of this element "'"effectively requires a showing that at the time of the jurisdictional hearing the child is at substantial risk of serious physical harm in the future . . . ."''" (*Ibid.*, italics omitted, quoting *In re B.T.* (2011) 193 Cal.App.4th 685, 692.) Evidence of past conduct may be probative of current conditions. (*In re D.L.*, *supra*, at p. 1146; accord, *In re James R.* (2009) 176 Cal.App.4th 129, 135-136, abrogated in part on another ground in *In re R.T.* (2017) 3 Cal.5th 622.)

DCFS bears the burden of proving that the minor comes under the juvenile court's jurisdiction by a preponderance of the evidence. (*In re M.R.* (2017) 7 Cal.App.5th 886, 896; see § 355, subd. (a).) On appeal, "'we must uphold the court's [jurisdictional] findings unless, after reviewing the entire record and resolving all conflicts in favor of the respondent and drawing all reasonable inferences in support of the judgment, we determine there is

7

no substantial evidence to support the findings.'" (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1022.)

Father contends that the court rejected the statutorily required elements in finding that any risk of harm was not serious or substantial, and that its failure to make the requisite findings requires reversal. We agree.

Respondent contends the issue has been forfeited because of the general rule that a parent may not challenge the sufficiency of the factual allegations in a dependency petition on appeal if he or she did not raise the issue in the court below. (See, e.g., *In re John M.* (2012) 212 Cal.App.4th 1117, 1123; *In re Christopher C.* (2010) 182 Cal.App.4th 73, 82.) Here, Father is not challenging the sufficiency of the petition, but the court's failure to make the findings required by statute. In finding jurisdiction warranted under section 300, subdivision (b), the court struck the language stating that the children were at "substantial" risk of "serious" physical harm. Section 300, subdivision (b), requires the court to find that "the child has suffered, or there is substantial risk that the child will suffer, serious physical harm or illness . . . ." As numerous courts have said, "section 300, subdivision (b) . . . '"means what it says. Before courts and agencies can exert jurisdiction under section 300, subdivision (b), there must be evidence indicating that the child is exposed to a substantial risk of serious physical harm or illness." [Citations.]' [Citation.]" (*Maggie S. v. Superior Court* (2013) 220 Cal.App.4th 662, 673, italics omitted, quoting *In re Noe F.* (2013) 213 Cal.App.4th 358,

8

366; accord, *In re Alysha S.* (1996) 51 Cal.App.4th 393, 399.) By striking the language that stated the children were at substantial risk of serious harm, the court made clear that it did not believe the parents posed the level of risk to the children that must be found to warrant assertion of jurisdiction under subdivision (b) of section 300. This was confirmed by the court's comment moments later, when it stated it did not believe Father and Mother posed "any . . . risk" to the children.[6] Accordingly, its finding that jurisdiction was warranted must be reversed.

Respondent cites *In re Alexzander C.* (2017) 18 Cal.App.5th 438 (*Alexander C.*), where the juvenile court similarly excised the words "'serious'" and "'physical'" from the petition, finding only a "'risk of harm'" to the child. The Court of Appeal concluded the father forfeited any issue pertaining to the language of the petition or the court's findings by failing to object at the jurisdictional hearing. (*Id.* at p. 446, fn. 3.) There, however, the juvenile court's dispositional order found by clear and convincing evidence that substantial danger existed to the physical health of the children, and that there were no reasonable means to protect them without removal from their parents' custody. (*Id.* at p. 451.) Thus, regardless of the words used by the juvenile

---

[6] The court's admittedly cryptic comment that by amending the petition, it was "invit[ing] reversal" by the Court of Appeal also suggests some awareness of the shortcomings in its jurisdictional findings.

court in its jurisdictional finding, there could be no question that the court had concluded the parents' actions posed a significant risk to the physical safety of their children.

Here, in contrast, the court's own comments in issuing the order under section 360, subdivision (b) and returning the children to their parents refute any inference that it found the parents posed a serious risk to their children's physical wellbeing. The court's statement -- "I don't believe these parents constitute any kind of risk to the children" -- could not have been clearer. Thus, while the *Alexander C.* court could confidently rely on the record before it to conclude the court had, despite its interlineations, concluded that the parents posed a significant risk to their children's physical health (the predicate for both its jurisdictional and dispositional orders), the record here supports only a contrary conclusion.

Respondent contends that the record supports the finding that the children were at substantial risk of serious harm due to the evidence that baggies containing methamphetamine residue were on the floor of the family home. If the record does not show that the court did, in fact, make the requisite findings, it is immaterial whether the evidence might have supported such findings. The test for substantial evidence is applied to the court's actual finding. (See *In re Abram L.* (2013) 219 Cal.App.4th 452, 463 [inappropriate for appellate court to imply findings where juvenile court failed to make express findings required by statute]; *Kemp Bros. Construction, Inc. v. Titan Electric*

10

*Corp.* (2007) 146 Cal.App.4th 1474, 1478 [where respondent argues for affirmance based on substantial evidence, record must show the court actually performed its factfinding function].) On this record, we cannot confidently say the court made the findings required by statute.

# DISPOSITION

The jurisdictional finding is reversed.

MANELLA, P. J.

We concur:

COLLINS, J.

MICON, J.*

---

*Judge of the Los Angeles County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re ISRAEL T. et al., Persons Coming Under the Juvenile Court Law. | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>VICENTE T.,<br><br>      Defendant and Appellant. | B286821<br>(Los Angeles County Super. Ct. Nos. DK23385, DK23385A, DK23385B)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:*

The opinion in the above-entitled matter, filed on November 21, 2018, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be certified for publication in its entirety in the Official Reports and it is so ordered.

MANELLA, P. J.,            COLLINS, J.            MICON, J.**

_____

**Judge of the Los Angeles County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution