Filed 8/28/20  In re M.P. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re M.P., et al., Persons Coming Under the Juvenile Court Law. | B304442 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>M.G.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. 17LJJP00167) |

APPEAL from findings and orders of the Superior Court of Los Angeles County.  Steven E. Ipson, Judge Pro Tempore.  Affirmed.

Julie E. Braden, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

The juvenile court asserted jurisdiction over minors M.P. and I.P. after finding their parents have a history of domestic violence. The court removed the children from their father's custody and released them to their mother. On appeal, the children's mother contends there is insufficient evidence supporting the jurisdictional findings. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

M.G. (Mother) and Manuel P. (Father) have two children together, M.P. and I.P. In August 2019, Mother called the police and reported an incident of domestic violence with Father. At the time, she was eight months pregnant with I.P.

Mother told the responding police officers she and Father had been in a relationship for four years, and they had lived together "on and off" during that time. They were not currently living together, and Mother had an emergency protective order against Father. Mother, however, agreed to let Father stay at her home for a few hours because he was having issues at his home. Two-year-old M.P. was with his maternal grandmother and was not home at the time.

At some point, Mother told Father to leave, which led to an argument. Father placed both his hands on Mother's chest and pushed her. Mother fell backwards and hit her head against a door frame. Fearing for her safety, she ran out of the house and drove down the street, where she called the police. According to Mother, there had been prior incidents when Father pushed her and threw items at her.

The police arrested Father for domestic battery and violation of a protective order. Mother refused an emergency protective order against him.

During the subsequent DCFS investigation, Mother repeatedly denied that she and Father had ever had any sort of physical altercation. According to Mother, she called the police because she was mad at Father, and she fabricated the story that he pushed her to ensure the police responded. Mother said her decision to call the police was "childish." It was also "childish" to obtain a protective order against Father, which she had tried to have dissolved. Mother said Father "knows how to walk away," is "sweet" to her, and is good with their children.

Mother has a long and significant child welfare history with DCFS and the juvenile court. Between 2011 and 2019, the court sustained multiple petitions related to her three other children, which included numerous allegations that she had an unresolved history of domestic violence with their father. Mother did not complete her court-ordered programs and failed to reunify with the children, who were in the process of being permanently placed with relatives and a foster parent.

Father denied to DCFS that he pushed Mother or that they had an abusive relationship. He claimed he and Mother got into an argument and she left when he started yelling. Father told DCFS he and Mother were "good parents" and "can sort this out."

Father was convicted of spousal battery in 2014. At the time of the August 2019 incident, he was on parole for a different offense. His parole was subsequently revoked, and he served 60 days in jail. He was released with the condition that he have no contact with Mother.

According to Father's parole officer, Mother previously obtained a restraining order against Father, but it had expired. Father was also subject to a domestic violence restraining order that precluded him from having contact with a different woman.

DCFS filed a petition asserting M.P. and I.P. are persons described by Welfare and Institutions Code section 300, subdivisions (a), (b)(1), and (j).[1] The petition alleged Father's violent conduct, and in particular the August 2019 domestic violence incident with Mother, placed the children at risk of serious physical harm, damage, and danger.

In response to DCFS's intervention, both Father and Mother enrolled in domestic violence courses. Although she had completed similar classes in the past, Mother said this time she was "taking it seriously" and learning a lot. DCFS described Mother as receptive and willing to participate in services to address its concerns about the children's safety.

On February 20, 2020, the juvenile court sustained the domestic violence allegations in the petition and found the children to be persons described by section 300, subdivision (b). It dismissed the counts under section 300, subdivisions (a) and (j). The court declared the children dependents, removed them from Father's custody, and ordered them released to Mother.

Mother timely appealed.

## DISCUSSION

### I. Substantial Evidence Supports the Jurisdictional Findings

Mother contends there is insufficient evidence to support the juvenile court's jurisdictional findings under section 300, subdivision (b). We disagree.

" 'In reviewing the jurisdictional findings . . . , we look to see if substantial evidence, contradicted or uncontradicted, supports them. [Citation.] In making this determination, we

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise specified.

4

draw all reasonable inferences from the evidence to support the findings . . . of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.' " (*In re R.T.* (2017) 3 Cal.5th 622, 633.)

Under section 300, subdivision (b)(1), the juvenile court may exercise jurisdiction over a child when the child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness" as a result of the failure of his or her parent to "adequately supervise or protect the child." (§ 300, subd. (b)(1).) It is well established that exposure to domestic violence may serve as the basis of a jurisdictional finding under section 300, subdivision (b)(1). (See *In re R.C.* (2012) 210 Cal.App.4th 930, 941; *In re Daisy H.* (2011) 192 Cal.App.4th 713, 717; *In re E.B.* (2010) 184 Cal.App.4th 568, 576, disapproved of on other grounds by *Conservatorship of O.B.* (2020) 9 Cal.5th 989.) "Although 'the question under section 300 is whether circumstances at the time of the hearing subject the minor to the defined risk of harm' [citation], the court may nevertheless consider past events when determining whether a child presently needs the juvenile court's protection. [Citations.] A parent's past conduct is a good predictor of future behavior." (*In re T.V.* (2013) 217 Cal.App.4th 126, 133, italics omitted.)

Here, there is sufficient evidence to support jurisdiction under section 300, subdivision (b)(1). The record shows that in August 2019, Father forcefully pushed Mother into a doorframe following a verbal argument. The violence was severe enough that Mother fled her home in fear before calling the police. She also reported this was not the first time Father was violent with her, as he had previously pushed her and thrown items at

her.[2]  Although there is no evidence that M.P. was present during any of this violence, Mother was eight months pregnant with I.P. during the August 2019 incident.  Father's violence against Mother, therefore, directly placed the unborn child at substantial risk of serious injury.  (See *In re Daniel B.* (2014) 231 Cal.App.4th 663, 674 [domestic violence exposed unborn child to risk of serious injury].)

There is also ample evidence from which the juvenile court could conclude it is likely M.P. and I.P. will be exposed to future incidents of domestic violence.  Although both parents participated in domestic violence programs, there is nothing in the record showing they gained meaningful insights into the risks such violence poses to their children or how to adequately protect them from it in the future.  Indeed, as of the jurisdiction hearing, both parents continued to deny that Father had ever used violence against Mother.  The court could have reasonably concluded that, until Mother and Father acknowledge and address Father's past domestic violence, it is likely to recur.  (See *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge."].)

Mother's history of abusive relationships provides further support for such a conclusion.  Mother's three other children were removed from her custody in part because of domestic violence, and she failed to reunify with them.  Despite this, she maintained a relationship with Father, even after he was physically violent with her.  The violence was apparently severe enough that

_____

[2]  The juvenile court found Father's denial and Mother's recantation of these allegations not credible.  We defer to the juvenile court's findings on these issues.  (See *In re R.T., supra,* 3 Cal.5th at p. 633.)

Mother obtained a restraining order against him. Nonetheless, she subsequently allowed him into her home while she was pregnant with I.P. Then, when Father used violence against her yet again, she refused a temporary protective order and repeatedly denied the incident even occurred. Although it appears Mother and Father had not had contact since the August 2019 incident, there is nothing in the record indicating either intended to end their relationship. From this, the juvenile court could have reasonably concluded Mother and Father would likely continue their abusive relationship, thereby placing the children at substantial risk of serious harm.

We reject Mother's suggestion that there was no reason to believe the domestic violence would continue given a condition of Father's parole required he stay away from her. Mother overlooks that Father previously violated the terms of his parole when he violently pushed her in August 2019. Given this history, the juvenile court could have reasonably concluded the parole condition alone was not sufficient to protect the children.

## II.    The Juvenile Court Made the Requisite Findings to Assert Jurisdiction Over the Children

For the first time in her reply brief, Mother alternatively contends jurisdiction was improper because the court failed to find the children were "at substantial risk" of harm. Instead, at the jurisdiction hearing, it simply noted they were "at risk" of harm. Mother's argument is untimely, and we may disregard it on that basis. (See *In re Luke H.* (2013) 221 Cal.App.4th 1082, 1090.) It also lacks merit. Immediately after noting the children were "at risk," the court found they were persons described by section 300, subdivision (b). As relevant here, that subdivision requires "a substantial risk that the child will suffer[] serious

7

physical harm or illness." (§ 300, subd. (b)(1).) We presume the court was aware of this requirement when it made its finding.

*In re Israel T.* (2018) 30 Cal.App.5th 47 (*Israel T.*), is distinguishable. In that case, the juvenile court struck language in a petition stating the children were at " 'substantial' " risk of harm, noting it did so to " 'invite reversal at the Court of Appeal.' " (*Id.* at p. 50.) The court then stated the parents did not pose " 'any kind of risk to the children.' " (*Ibid.*) Here, the juvenile court did not strike any language in the petition related to the section 300, subdivision (b)(1) allegations; nor did it make any statements analogous to those made by the court in *Israel T.* Instead, it is clear from the entire record that the court made the requisite findings to assert jurisdiction over the children.

## DISPOSITION

The findings and orders are affirmed.

BIGELOW, P. J.

We concur:

GRIMES, J.

STRATTON, J.

8