Filed 12/22/20  In re D.G. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re D.G. et al., Persons Coming Under the Juvenile Court Law. | B304304 (Los Angeles County Super. Ct. No. 19CCJP07515) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>          Plaintiff and Respondent,<br><br>     v.<br><br>C.G.,<br><br>          Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Rashida A. Adams, Judge.  Affirmed.

Anne E. Fragasso, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica S. Mitchell, for Plaintiff and Respondent.

_____

Appellant C.G. (Mother) challenges the juvenile court's exercise of dependency jurisdiction over her children. The court found that Mother physically abused one child, placing the others at risk of serious harm; Mother allows Marco A., an alcoholic and father of her youngest, to frequent the home in violation of a restraining order; Marco endangers the children by engaging in violent altercations, and aggressive and threatening behavior in the presence of the children, and Mother failed to protect the children. (Welf. & Inst. Code, § 300, subd. (b).)[1] Substantial evidence supports dependency jurisdiction. We affirm.

## FACTS AND PROCEDURAL HISTORY

Mother has eight children. Three are adults who are not part of this proceeding. Mother's five minor children are: D.G. (born in 2003); A.G. (2005); J.G. (2007); S.G. (2012); and R.E. (2018). Mother is separated from her husband, B.G., presumed father of all the children except R.E.; he lives in West Virginia and is not an offending parent. Marco A. is the biological father of R.E. Neither father is a party to this appeal.

In January 2019, respondent Department of Children and Family Services (DCFS) was notified that Marco hit Mother in the face as she pushed R.E. in a stroller on the street. He tried to take R.E., who cried but was uninjured. Police arrested Marco for domestic violence and for violating a criminal protective order issued in 2018 as a condition of his probation.

Mother obtained a restraining order (RO) against Marco. She told DCFS that Marco is an alcoholic who is aggressive when intoxicated. DCFS warned Mother that allowing Marco in her home would have "consequences" due to his domestic violence.

Marco was incarcerated for his attack on Mother. A second criminal protective order was issued in October 2019 as a condition of probation. His criminal history includes convictions for driving under

---

[1] Unlabeled statutory references are to the Welfare and Institutions Code.

the influence; possession of an open container; disorderly conduct; battery; and violating a protective order.

In October 2019, DCFS received a report that 13-year-old A.G. disclosed physical and verbal abuse at home. Mother pulled A.G.'s hair, grabbed A.G.'s arm and left a half-inch mark, yells at baby R.E., and fights with Marco. Marco ignores the RO, spends nearly "every night" at Mother's home and threatens to take R.E. A.G. "is scared of Mother," stressed and unable to sleep.

Mother admitted that she lets Marco in her home and pulled A.G.'s hair. She denied taking her anger out on the children or that Marco is physically abusive. While DCFS was interviewing Mother, Marco came to the home smelling strongly of alcohol. Mother began to open the door for Marco, until the social worker reminded her of the RO. Marco was screaming, yelling and refused to speak to the social worker, who called police. Marco ran away when he realized police were being summoned. The social worker told Mother that she is being non-protective by allowing Marco inside the house.

A.G. had marks on her wrist where Mother grabbed and pulled her during an argument. The argument was sparked when A.G. told Mother "she is doing wrong by allowing Marco in the home and . . . should be protecting them and not exposing [them] to a 'drunk man' who 'yells and screams at her.' " Mother was upset and told A.G. it was not her place to tell Mother how to parent. A.G. cannot sleep at night because Mother and Marco argue inside the house or Marco yells and screams outside the house. A.G. stays home from school "to make sure 'everything was going to be ok.' " Mother pulled A.G.'s hair when she refused to go to school.

A.G.'s siblings, seven-year-old S.G. and 11-year-old J.G., denied that Marco enters Mother's house or argues with her. Fifteen-year-old D.G. said Mother allows Marco to violate the RO and enter the home while intoxicated; D.G. asked Mother to keep Marco out because he "gets aggressive." D.G. feels safe when Marco is not in the home. Mother's adult children validated reports that Mother allows Marco in the house while intoxicated and exposes the children to arguments.

The younger children told their adult sister that they saw Marco hit Mother; they later recanted because they feared Mother would get in trouble.

When the DCFS social worker made an unannounced visit to discuss concerns about Marco, Mother refused to let the social worker enter the house or see the children. She demanded that DCFS close the case. The social worker discovered that Marco was incarcerated again. DCFS determined that the children are at "high" risk because Mother ignores the RO and allows Marco access to her home and children despite his history of domestic violence and substance abuse.

A petition was filed alleging that Mother physically abused A.G. by pulling her hair and arm, leaving marks, placing the other minors at risk of harm; the children are at risk of serious physical harm because Mother allows Marco to frequent the home and have access to the children despite his domestic violence with Mother in the children's presence, criminal history of battery, and the existence of an RO protecting Mother and R.E.; Mother failed to protect the children; and Mother's abuse of A.G. puts siblings at risk of abuse. (§ 300, subds. (a), (b), (j).)

Mother denied the allegations at the detention hearing on November 22, 2019. The court found a prima facie case that section 300 applies to the children. Mother retained custody under DCFS supervision. The court ordered the parents not to discuss the petition with the children.

The family was interviewed for the jurisdiction report. The children denied that Mother abuses them. D.G. said that Marco has an alcohol problem and bangs loudly on Mother's door but she does not let him in. A.G. said she had a physical fight with Mother about Marco entering their home. J.G. heard Mother and Marco have "little arguments," observing, " 'I just know [Marco] was not right in the head because he's usually drunk.' " S.G. does not like Marco because he drinks and bangs on the door. They denied that Mother allows Marco in the house.

4

Mother said she fought with A.G., who was late for school. She grabbed A.G.'s arm but denied pulling her hair. She did not mean to hurt A.G. She usually talks to her children when they misbehave. Mother said Marco has alcohol and mental problems. She obtained an RO after he slapped her while she was outside with R.E. She claims she "always protected [the children] but because he would knock at the door, they thought I let him in drunk but he never touched them or hit them."

Mother does not want to resume her relationship with Marco; her children are her priority. She acknowledged that she needs to move elsewhere to protect them and now calls for help when Marco appears at her home. Law enforcement responded to Marco's violations of the RO seven times from October 2019 to January 2020.

Father B.G. said that the children did not disclose physical abuse by Mother. He is aware that Marco and Mother engaged in domestic violence and that Marco comes to the family home intoxicated and threatens to break down the door or windows. B.G. supports his family by working 13-hour days in West Virginia to pay rent for their home in California. He worries about the children being exposed to Marco's violence.

Marco denied that he and Mother engage in domestic violence, or that she was physically abusive toward the children. He said he pushed her once when she grabbed his shirt. He denies having a drinking problem.

Mother's adult daughter Araseli knows Marco pushed Mother and yelled at her as she walked the children home from school. He comes to the family home and bangs on the doors. Mother lets him in and allows him to sleep in the kitchen. "He'd be aggressive with [Mother] really loudly and we'd be hearing yelling and him saying unreasonable things." Araseli feels Mother failed to protect the children by allowing Marco to sleep in their house.

DCFS advised the court that Mother inappropriately allowed Marco in her house, knowing his substance abuse issues and history of domestic violence. The children did not feel safe, and A.G.'s protests

5

about Marco led to a physical altercation between Mother and A.G. Once DCFS intervened, Mother began calling police when Marco violated the RO because she understood that the children might be removed from her custody. Marco took no responsibility for his behavior and continued to violate the RO.

At the jurisdiction hearing, DCFS asked the court to sustain three of the six counts alleged in the petition. Mother conceded that she had violent altercations with Marco in the children's presence. However, she and counsel for the children argued that there was no evidence of a current risk of harm to the children. Mother's fight with A.G. was "a one-time incident" and she now vigilantly calls the sheriff to protect the children when Marco comes to her home.

### The Court's Findings

The court struck the counts arising under section 300, subdivisions (a) and (j) and sustained allegations under subdivision (b). It stated, "The evidence before the court indicates that while there were certain protections in place, Mother, seemingly overwhelmed by [Marco's] repeated returns—drunken returns to the home, did allow him in on several occasions due to [her] inability to otherwise manage his behavior when calling law enforcement alone did not solve the problem of him coming to the house drunk, banging on the door, being aggressive. There is evidence before the court that there have been physical altercations between [Marco] and Mother." The court noted that Marco admitted pushing Mother.

With respect to Marco the court stated, "There is ample evidence before the court that he is currently abusing alcohol, [which] prevents him from providing any adequate care of his own child—and that Mother failed and was unable to protect the children adequately from him and that, despite his drunkenness, she did allow him into the home on several occasions. It is clear that he is dangerous in the state in which he presents himself in the home and that this places the children at risk of serious harm."

As to Mother's fight with A.G., the court found, "The evidence before the court indicates that this incident did occur; that it was an

6

out-of-control disciplinary issue related to [Marco]; that Mother did not have the proper tools to deal with the issue with [A.G.] in any other manner. The court finds that this is an issue which places the children at risk of serious physical harm in that it evidences a need for Mother to have additional tools to deal with any disciplinary or behavioral issues."

Moving to disposition, the court declared the children dependents of the court, finding it would be detrimental if they were not subject to DCFS supervision. Services available to the family permit Mother to have continued custody. DCFS was ordered to provide family maintenance services. Over her objection, Mother was ordered to take parenting classes and have individual counseling that encompasses domestic violence.

## DISCUSSION

Mother contests the court's exercise of jurisdiction. On appeal, we uphold jurisdictional findings if they are supported by substantial evidence. We review the entire record, resolving all conflicts in favor of the respondent and drawing all reasonable inferences in support of the judgment. (*In re R.T.* (2017) 3 Cal.5th 622, 633; *In re Israel T.* (2018) 30 Cal.App.5th 47, 51.)

Marco did not appeal the sustained findings against him or the exercise of dependency jurisdiction. This alone requires affirmance. "Because the juvenile court assumes jurisdiction of the child, not the parents, jurisdiction may exist based on the conduct of one parent only." (*In re J.C.* (2014) 233 Cal.App.4th 1, 3.) Because jurisdiction exists regardless of the findings against Mother, we " 'need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.' " (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

Dependency jurisdiction arises if a child has suffered, or is at substantial risk of suffering, serious physical harm as a result of parental failure or inability to adequately supervise or protect the child. (§ 300, subd. (b)(1).) A child need not actually be abused or neglected before the court can assume jurisdiction; there need only be a

7

" 'substantial risk' " or abuse or neglect. (*In re I.J., supra,* 56 Cal.4th at p. 773.)

The evidence shows that Marco has been terrorizing Mother and her family for several years. A criminal protective order has been in place since 2018, forbidding Marco from approaching Mother or her home because of his history of domestic violence. Marco hit Mother's face and attempted to pull R.E. from her stroller in January 2019. This resulted in Marco's arrest and the issuance of an RO.

Despite the 2018 protective order and the 2019 RO, Mother allowed Marco to enter the home while intoxicated. Tellingly, Mother went to open the front door when Marco appeared while the DCFS social worker was interviewing Mother in October 2019 about Marco's and Mother's abusive behavior. Marco was yelling and smelled strongly of alcohol. The social worker called 911 and had to remind Mother of the RO.

The children were fearful when Marco was in their home. A.G. and D.G. asked Mother to keep Marco out because of his screaming, yelling and aggressiveness, which caused A.G. to be unable to sleep, to miss school, and to fear going home. When A.G. confronted Mother about allowing Marco in the home, Mother's response was to accuse A.G. of meddling and physically attack the child, injuring her wrist.

Mother admitted letting Marco into the home, knowing he has substance abuse and mental problems. Her excuse—that Marco did not hit the children—did not diminish the danger he poses, which is why multiple protective orders are in place. "Domestic violence impacts children even if they are not the ones being physically abused, 'because they see and hear the violence and the screaming.' " (*In re T.V.* (2013) 217 Cal.App.4th 126, 134; *In re Heather A.* (1996) 52 Cal.App.4th 183, 192.)

The jurisdictional findings against Mother are not "based on a single episode of endangering conduct" that is unlikely to reoccur. (*In re Yolanda L.* (2017) 7 Cal.App.5th 987, 993.) This was not a single episode. It occurred almost nightly and it continued even after DCFS became involved with the family.

Respondent's concerns about the children's safety began in January 2019, when Marco attacked Mother. Marco told DCFS he has resided with Mother for a year, in violation of the criminal protective order; Mother initially denied it, then said she did not consider him to be living in the home "because he only stayed at night," when the children are there. DCFS warned her that failure to enforce the order would have "consequences."

DCFS had "a worry" that Mother knew of the protective order yet "continued to allow Marco to come to the home." It did not file a petition, hoping Mother would call police when Marco violated the RO; however, the initial involvement of DCFS did not deter Mother, who continued to allow Marco into the house almost every night. DCFS received a new report in October 2019. After an investigative visit, Mother demanded that DCFS close the case and refused to let the social worker enter the house or see the children.

Substantial evidence supports the finding that Mother is an offending parent. She repeatedly allowed a violent, intoxicated man to violate protective orders and enter her home, posing a substantial risk of harm to the children. Mother did not stop Marco until DCFS intervened, demonstrating her failure or inability to protect the children without court and DCFS supervision. By telling the court that she did not need individual or domestic violence counseling, Mother showed a lack of insight into the problems that led to dependency jurisdiction.[2]

Mother argues that the juvenile court "should have considered a disposition pursuant to section 360, subdivision (b)." She contends that "the court erred in declaring the children dependents of the juvenile court, and should have, instead, ordered DCFS to supervise the family without adjudicating the children dependents" pursuant to section 360.

---

[2] We need not address other grounds for affirming the judgment. (*In re I.J., supra,* 56 Cal.4th at p. 773; *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)

9

The court was not asked to apply section 360 at the hearing. Mother did not object when the court declared the children dependents. She cannot claim error on appeal after failing to raise section 360 below. (See *In re Anthony P.* (1995) 39 Cal.App.4th 635, 641 [issues not raised at trial are forfeited].)

The court declared the children dependents because Marco, father of R.E., presents an ongoing threat to the family. Marco does not contest the court's jurisdiction. Informal supervision was untenable because Mother refused to enforce the RO against Marco after DCFS warned her to do so in January 2019. The children were properly declared dependents of the court.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

LUI, P.J.

We concur:

CHAVEZ, J.

HOFFSTADT, J.

10