Filed 4/28/25  In re A.T. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re A.T., a Person Coming Under the Juvenile Court Law. _____ <br><br> LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> D.I. et al., <br><br> Defendants and Respondents; <br><br> A.T., a Minor, etc., <br><br> Appellant. | B338149 <br><br> (Los Angeles County Super. Ct. No. 24CCJP01262A) |

APPEALS from an order of the Superior Court of Los Angeles County.  Terry T. Truong, Judge.  Reversed with directions.

Dawyn R. Harrison, County Counsel, and Kim Nemoy, Assistant County Counsel, for Plaintiff and Appellant.

Roni Keller, under appointment by the Court of Appeal, for Defendant and Respondent D.I.

Pamela Deavours, under appointment by the Court of Appeal, for Defendant and Respondent N.L.

Karen J. Dodd, under appointment by the Court of Appeal, for Minor.

_____

The evidence presented at the adjudication hearing in this matter showed that D.I. (Mother) and N.L. (Father) violently robbed a woman at gunpoint, all while Father cradled the couple's one-year-old son. The juvenile court found that this "one time incident" did not justify juvenile court jurisdiction, and on that basis dismissed the pending Welfare and Institutions Code section 300 petition.[1]

The Los Angeles County Department of Children and Family Services (Department) and minor, A.T., appeal the juvenile court's order, arguing that the evidence compelled a finding that A.T. was at a substantial risk of harm due to the parents' actions, as a matter of law. We agree and reverse the dismissal order.

## BACKGROUND

This matter came to the attention of the Department in April 2024, after A.T. was taken into protective custody by law enforcement following the arrest of Mother and Father for suspected armed robbery.

According to the pertinent investigative report, on March 1, 2024, law enforcement was notified of a robbery at a shopping mall parking lot. Officers responded to the parking lot and interviewed the victim. The victim stated that, after buying baby clothes at the mall, she was placing her shopping bag and her infant in her car when she was

_____

[1] Undesignated statutory references are to the Welfare and Institutions Code.

approached from behind by two people. Mother—whom the victim recognized because Mother previously dated the victim's brother—began punching and pushing the victim. A male accomplice, who was wearing a black ski mask and carrying a baby "during the entire incident," soon joined in the pushing and punching. The victim fell to the ground. The male perpetrator reached into her pocket and removed cash, her iPhone, and car keys. He then reached into the backseat and grabbed the shopping bag. As the victim tried to retrieve her keys, Mother yelled, "Shoot her!" and the male perpetrator pulled a gun and pointed it at the victim. Mother continued to yell, "Shoot her!" but when the victim backed away, the couple (with their baby) fled on foot. The victim suffered a swollen left cheek, small lacerations on her face and neck, and broken fingernails.

The victim immediately identified Mother as the female perpetrator. A search of Mother's phone and social media positively identified Father as the male suspect.

Mother and Father were arrested on April 19, 2024. The arrest report stated that a surveillance operation was conducted outside of an apartment where Mother and Father were believed to be staying. Father was seen leaving through a rear alley, wearing a satchel bag. He was quickly apprehended. A semiautomatic pistol, loaded with 10 rounds of live ammunition plus one live round in the chamber, was found in the bag. Father stated that he was just leaving his apartment and that his girlfriend was at home. Officers ordered all residents to exit the apartment unit, and after multiple commands, Mother came out, carrying A.T. She was taken into custody, and both she and Father were booked for robbery. No other person was present in the apartment, but a black ski mask and 34 additional rounds of live ammunition were located. It was later determined that the pistol Father carried was stolen from an out-of-state police department.

Following the arrest of Mother and Father, A.T. was released to the Department. He was approximately 16 months old at the time.

Upon initial contact by the Department, at the police station, A.T. had no shoes or socks, his clothes were dirty, and he "presented with poor hygiene." During the assessment, however, A.T. appeared happy, energetic, and healthy, and had no unusual marks or bruises.

Mother, who was only 18 years old at the time of the arrest, had an extensive juvenile arrest record, including multiple arrests for burglary and robbery, as well as an arrest for illegal possession of a concealed weapon. Six of Mother's arrests came after the birth of A.T. Father, who was also 18, had one prior arrest.

On April 20, 2024, a Department social worker interviewed Mother at the police station. Mother denied ever being involved in a robbery. She stated that, in the days leading up to the arrest, she had been staying in Father's apartment. She claimed that, on the day of the arrest, she was in the apartment alone with A.T. and denied having any knowledge that Father kept a weapon inside the home.

Father was also interviewed by the social worker. In regard to his arrest the previous day, he stated that he was arrested after he left the apartment to take out the trash and get "fresh air" away from Mother, since they had just argued in the apartment. Father admitted that he had a loaded handgun in his possession, stating that he carried it because Mother's ex-boyfriend had threatened to kill him. Father denied, however, that he committed a robbery with Mother while holding A.T. in one hand and a gun in the other.[2]

On April 23, 2024, the Department filed a section 300 petition on behalf of A.T., alleging under section 300, subdivision (b): "In December of 2023 [*sic*], . . . [Mother ] and [Father] . . . placed the child

---

[2] The detention report prepared by the social worker states that Father and Mother both denied committing a robbery in December 2023. The social worker seemed to mistakenly believe that the incident occurred in December 2023 and not March 2024, as this incorrect date appears numerous times throughout the Department's reports, as well as in the section 300 petition.

in a detrimental and endangering situation in that the mother and the father engaged in the criminal act of robbery while the child was in the mother and the father's care and custody. The father held the child and brandished a gun at the victim. The mother told the father to kill the victim. On 04/19/24, the mother and father were arrested for robbery and leaving the child without a caregiver. Further, upon father's arrest the father was found to be in possession of a loaded hand gun. Such a detrimental and endangering situation established for the child by the child's father and mother endangers the child's physical health and safety and places the child at risk of serious physical harm, damage, danger and death."

The juvenile court ordered A.T. detained on April 24, 2024. On April 25, 2024, Father was found to be the presumed father. At that hearing, counsel for both Mother and Father requested that they not be interviewed further without counsel present, given the ongoing criminal case.

The adjudication hearing was held on May 29, 2024. Mother was present, in custody. Father, who had been released on bond, was present via videoconference. The juvenile court received the Department's reports, which included the police reports, without objection. No further evidence was presented by any party, and no witnesses were called.

The juvenile court heard argument from counsel. Mother's counsel argued that the case should be dismissed "based on the filing of the police report and the hearsay contained within." Counsel noted that the Department did not interview the victim and instead relied on police reports. According to counsel, Mother "vehemently" denied the contents of the police reports. Further, counsel argued that, even if the court found that the robbery occurred, it was "isolated in nature." Father joined in Mother's arguments, with counsel stating that Father denied the allegations in the petition. Counsel for A.T. and the Department both argued in favor of sustaining the petition.

The juvenile court dismissed the section 300 petition with prejudice and ordered A.T. returned to Father's care. The court ruled on the record: "At this time the court does not find by a preponderance of the evidence that the department has proven its case. I don't see a nexus here between the parents' alleged actions and any risk of harm to this child. This is a one-time incident. I am not in any way indicating or finding that the alleged actions are minor in question. If proven to be true in the criminal court, they are serious actions . . . . But this court is not charged with looking at exactly the actions by the parents. I am charged with looking at the actions of the parents and how it relates to the child and whether the child is harmed in any way or at risk of harm. And I cannot find that the child was harmed on the day of the incident and that he is at risk of harm by the parents' actions on the day in question. So the petition is dismissed with prejudice."

Both A.T. and the Department filed timely notices of appeal from the juvenile court's dismissal order made at the adjudication hearing. On June 26, 2024, after receiving initial briefing and hearing oral argument, this court issued a writ of supersedeas staying the dismissal order and ordering that A.T. remain detained in Department custody pending the outcome of this appeal.

## DISCUSSION

The Department and A.T. challenge the juvenile court's dismissal of the section 300 petition. The purpose of section 300 "is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm." (§ 300.2; *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 599 (*Giovanni F.*).)

The Department alleged that the juvenile court had jurisdiction over A.T. under section 300, subdivision (b)(1). A jurisdiction finding under this subdivision "requires the Department to prove three

6

elements:  (1) the parent's or guardian's neglectful conduct or failure or inability to protect the child; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness."  (*In re Cole L.* (2021) 70 Cal.App.5th 591, 601.)

In dismissing the section 300 petition, the juvenile court found that the Department had not "proven its case."  "[W]here the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law."  (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528 (*I.W.*), disapproved on other grounds in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1003, fn. 4; see also *In re Luis H.* (2017) 14 Cal.App.5th 1223, 1227 [applying standard to minors challenging dismissal of a dependency petition].)  "Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' "  (*I.W., supra,* at p. 1528.)

## I.    The Incident

Both Mother and Father argue that, under the governing standard of review, the juvenile court's dismissal order must be affirmed.  They base their argument on an assertion that the juvenile court dismissed the section 300 petition because the Department failed to adequately prove that the "incident"—the March 1, 2024 robbery—occurred.

A review of the juvenile court's ruling shows that a lack of proof that the incident occurred was *not* the basis for the court's decision.  Instead, in ruling, the court stated:  "I cannot find that the child was harmed on the day of the incident and that he is at risk of harm by the parents' actions on the day in question."  The court found that it was a "one time incident" and that there was not a "nexus . . . between the parents' alleged actions and any risk of harm to this child."  The court's focus, therefore, was not on a lack of proof regarding the March 1, 2024

incident; indeed, the court found that it was a "one time incident." Rather, the court's ruling was based on a finding that A.T. was not harmed or put at risk of harm by "the parents' actions on the day in question."

Contrary to the arguments put forth by Mother and Father, there was more than adequate evidence presented at the adjudication hearing for the juvenile court to find that the incident occurred.[3] The police reports contained in the record detailed the events in question, including how both Mother and Father assaulted the victim, taking her valuables, how Father pulled a gun while Mother yelled "shoot her," and how Father held A.T. throughout the incident. As Mother states in her respondent's brief, she and the victim had an "intimate history" since Mother previously dated the victim's brother, so the victim had no

---

[3] On April 21, 2025, well after completion of briefing, counsel for Mother filed a request for judicial notice in this appeal attaching a September 19, 2024 minute order from a criminal case stating that, on that date, Mother was found by a jury "not guilty, of the crime of Second-Degree Robbery, on or about March 1, 2024, in violation of Penal Code section 211, a Felony, as charged in count 1 of the Information." The request also attached an order for release of the same date. This court granted judicial notice. These orders, however, do not demonstrate that the juvenile court's finding at the adjudication hearing that the incident occurred was erroneous. The adjudication hearing occurred more than three months before the apparent acquittal. The judicially noticed orders did not exist at the time of the hearing and so could not have been considered by the juvenile court. (See § 355, subd. (a) [discussing evidence that may be considered].) Furthermore, the orders provide no context regarding the apparent acquittal, the possible reasons therefor, or the evidence presented at the criminal trial. Moreover, the orders appear to relate only to Mother and do not reference Father. While the criminal trial proceedings may be pertinent to issues going forward in this dependency matter, the judicially noticed orders do not impact our analysis of the adjudication findings.

difficulty in immediately identifying Mother. Father, meanwhile, was positively identified by electronic records. At the hearing, the Department had the burden of proof "by a preponderance of the evidence" (*In re Israel T.* (2018) 30 Cal.App.5th 47, 51), and it sufficiently satisfied this standard in showing that the incident occurred.

In contrast, the parents offered no evidence at the hearing and did not object to the evidence presented by the Department. While the burden was on the Department to prove its case, not the parents to disprove it, the evidence before the juvenile court adequately established the details of the March 1, 2024 incident—that, as stated by the juvenile court, it was a "one time incident." The juvenile court properly credited the Department's presentation, implicitly rejecting the parents' vague denials made in their interviews with the Department. We "must defer to the juvenile court on questions of credibility" (*Giovanni F., supra,* 184 Cal.App.4th at p. 600, fn. 5; see also *In re Marquis H.* (2013) 212 Cal.App.4th 718, 726–727 [" ' "We do not reweigh the evidence, evaluate the credibility of witnesses or resolve evidentiary conflicts" ' "]), and therefore accept its determination that the March 1, 2024 incident occurred.[4]

---

[4] Mother and Father note that the allegations pleaded in the section 300 petition mislabeled the incident as occurring in "December of 2023" and argue that this was another basis for dismissal. The juvenile court, however, properly disregarded this drafting mistake in finding that the incident occurred. The court was under no obligation to dismiss the petition just because of sloppy drafting. Instead, if it had sustained the petition, it simply could have amended the allegations to reflect the correct date of the incident. (*In re I.S.* (2021) 67 Cal.App.5th 918, 927 ["A juvenile court may amend a dependency petition to conform to the evidence received at the jurisdiction hearing to remedy immaterial variances between the petition and proof"].)

## II. Substantial Risk of Serious Harm

The issue to be decided on appeal thus becomes whether the evidence, as a matter of a law, compelled a finding that A.T. was at a substantial risk of serious harm due to the parents' actions. (See *I.W., supra,* 180 Cal.App.4th at p. 1528.) The juvenile court found that A.T. was not at risk of harm. We disagree with the juvenile court and conclude that such a finding was required.

As noted above, in dismissing the section 300 petition, the juvenile court emphasized that the March 1, 2024 occurrence was a "one time incident" and ruled that it could not "find that the child was harmed on the day of the incident and that he is at risk of harm by the parents' actions on the day in question." Mother, in her appellate brief, similarly argues that a "single episode of parental conduct is insufficient to bring children within the juvenile court's jurisdiction when there is no current risk of harm." In support of this argument, Mother relies on *In re J.N.* (2010) 181 Cal.App.4th 1010, 1023, which rejected the premise that section 300 subdivision (b) "authorizes dependency jurisdiction based upon a single incident resulting in physical harm absent current risk." *J.N.* went on to hold, however, that the "nature and circumstances of a single incident of harmful or potentially harmful conduct may be sufficient, in a particular case, to establish current risk depending upon present circumstances." (*In re J.N.*, at p. 1026.)

Given the extreme nature of the risk to which the parents exposed A.T. and the absence of any evidence that the parents are unlikely to repeat dangerous behavior in A.T.'s presence, the only reasonable conclusion at the time of the adjudication hearing was that A.T. remained under a substantial risk of serious harm if placed with his parents. The March 1, 2024 incident was a strikingly dangerous event in which to involve a young child. The parents, on their own volition, thrust their 16-month-old child into a violent and perilous confrontation. According to the evidence, they not only instigated the

matter but escalated it—pushing the victim to the ground, rummaging through her pockets, stealing from her, and ultimately pointing a gun at her, all while Father held A.T.  Rather than immediately fleeing when the victim struggled, Mother instructed Father to shoot her.

Indeed, it is difficult to imagine a more dangerous situation for a young child.  The parents' actions posed an immediate risk of severe harm to A.T.'s physical health and safety.  A.T. could have been hit during Mother's and Father's struggle with the victim, been dropped by Father, or suffered a gunshot wound.  The fact that A.T. apparently did not suffer physical injury was pure happenstance.  "The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child."  (*In re R.V.* (2012) 208 Cal.App.4th 837, 843.)  This rule has particular force in a matter involving a child as young as A.T.  Exercise of dependency court jurisdiction under section 300, subdivision (b), is proper when a child is "of such tender years that the absence of adequate supervision and care poses an inherent risk to their physical health and safety."  (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824.)

The dismissal order in this case contravenes the purpose of dependency jurisdiction.  " '[T]he purpose of dependency proceedings is to prevent risk, not ignore it.' "  (*Jonathan L. v. Superior Court* (2008) 165 Cal.App.4th 1074, 1104.)  In *Giovanni F., supra,* the court found that an incident in which a father drove with one hand on the steering wheel while using the other hand to hit and choke the mother, placed the young child, who was a passenger in the car, "at substantial risk of suffering serious physical harm," and that the episode "would have been sufficient, by itself," to support dependency jurisdiction. (*Giovanni F.*, *supra*, 184 Cal.App.4th at p. 600.)  The incident here was no less shocking and dangerous.

True, it was a "one time incident" in that there was no evidence that Mother and Father committed another armed robbery while holding A.T.  But even if the March 1, 2024 incident alone was not

11

enough to mandate jurisdiction, other evidence presented at the hearing showed that this was not the sole instance that the parents placed A.T. in danger. Putting aside mother's extensive history of arrests, including for robbery, the fact remains that Father was apprehended with a loaded firearm immediately after leaving the presence of A.T. The evidence presented at the hearing clearly demonstrated that, on the day of the parents' arrest, Father left the apartment in which A.T. was present while carrying a loaded semiautomatic firearm and that additional rounds of ammunition were left in the apartment. This incident was an additional factor that the juvenile court should have considered in making its jurisdictional ruling. (See *In re Yolanda L.* (2017) 7 Cal.App.5th 987, 995 ["It takes little to persuade us that a young child with access to a loaded gun is at substantial risk of serious physical harm"].)

In any event, the March 1, 2024 incident—which occurred less than three months before the adjudication hearing—presented such an extreme risk of danger to A.T. that little, if any, additional evidence was required to necessitate jurisdiction. (See *In re I.J.* (2013) 56 Cal.4th 766, 778 [" 'Even . . . a low degree of probability" can give rise to substantial risk if "the magnitude of the harm is potentially great.' "].) We conclude, as a matter of law, that the juvenile court was obligated to find that A.T. was at a substantial risk of serious physical harm due to the parents' neglectful and wrongful conduct. The court therefore erred in dismissing the section 300 petition.

12

## DISPOSITION

The juvenile court's May 29, 2024 order dismissing the section 300 petition is reversed. The matter is remanded to the juvenile court with directions to vacate its order dismissing the petition, to issue a new order sustaining the petition, and to amend allegations as appropriate, including with respect to the date of the March 1, 2024 incident. The writ of supersedeas and associated stay of juvenile court proceedings are dissolved.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.

13