Filed 1/8/21  In re K.R. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re K.R. et al., Persons Coming Under the Juvenile Court Law. | B300269, B305038 (Los Angeles County Super. Ct. No. 19CCJP03253) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. T.R., Defendant and Appellant. | |

APPEALS from orders of the Superior Court of Los Angeles County, D. Brett Bianco, Judge.  Affirmed.

Nicole Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Acting Assistant County Counsel, and Tracey Dodds, Principal Deputy County Counsel, for Plaintiff and Respondent.

In this consolidated dependency appeal, T.R. (Father) challenges (1) a jurisdictional finding relating to his sex offender status in Arizona and (2) a finding that he received reasonable reunification services. Neither claim succeeds. First, dependency jurisdiction exists based on the *uncontested* finding that Father engaged in domestic violence. (Welf. & Inst. Code, § 300, subd. (b).)[1] The sex offender finding is surplusage. Second, Father's noncompliance with the case plan stems from his mistaken belief that he has no culpability for this dependency proceeding, not from a lack of reunification services. We affirm.

**FACTS AND PROCEDURAL HISTORY**

Father has two minor children with his estranged wife E.D. (Mother). They are K.R. (born in 2014) and P.R. (2015). Mother's son T.D. (2011) was fathered by H.L.[2] All three children live with Mother in California, where she took up residence in 2018. Both fathers reside in Arizona.

In March 2019, respondent Department of Children and Family Services (DCFS) was notified that T.D. frequently misses school, was "scared for his life," and Mother snorts a white powder and smokes marijuana. T.D. told a social worker he was sad because his family has "had a tough life" and lacks a stable home. He worries because Mother has seizures.

T.D. said Mother accidentally burned down their home in Arizona and the family lost everything; he fears it will happen again. He also fears Mother, who hits him with cords, a metal spatula, a toilet paper roll and her hands, striking his hands, arms, legs, and chest. She does not hit his younger siblings but shoves them when she is upset and smokes outside the house with "gang bangers."

---

[1] Undesignated statutory references in this opinion are to the Welfare and Institutions Code.

[2] The court sustained findings against Mother and H.L. in this proceeding. Mother did not appeal. H.L. abandoned his appeal, which we dismissed on August 6, 2020.

2

T.D. said Father consumes a lot of alcohol. T.D. saw Father threaten to stab Mother with a nine-inch knife, holding it against her spine until relatives stopped him; he was arrested. Father's criminal history includes convictions for sexual assault and aggravated domestic violence.

Father's violence inspired Mother to flee the abusive relationship and move to California. She initially left P.R. and K.R. with Father in Arizona. When she returned in September 2018, Father allowed her to take only P.R. In October 2018, when Mother tried to pick up K.R., she and Father had a wrestling match over K.R. while Father held the child in his arms. Mother said she uses marijuana for epilepsy but denied snorting white powder.

The social worker had difficulty communicating with P.R. and K.R., ages three and four. Mother indicated that K.R. needs speech therapy because he speaks very few words. T.D. struggles at school due to family trauma and frequent absences. Mother said she punishes the children with "time-outs" and verbal reprimands. A daycare provider said she did not see marks or bruises on the children.

DCFS learned that Mother has an outstanding warrant in Arizona on charges of possessing drug paraphernalia and two pounds of marijuana. She does not have full legal custody of her children because she did not submit paperwork while Father was incarcerated. Mother said her apartment burned down in a grease fire when the children were not at home.

In May 2019, DCFS was alerted that T.D. was crying in class and said "he just wanted to die." He told school staff that Mother left him and P.R. alone at home for two nights; he is too scared to sleep when Mother is gone all night. When interviewed by social workers, T.D. denied saying he wanted to die or that Mother was absent from home all night, or that he fears Mother or that she physically disciplines him using objects. T.D. said Mother "told him that if he said something wrong mom will be taken away." A medical examination of T.D. did not reveal any injuries consistent with child abuse.

On May 20, 2019, DCFS was notified that Mother was arrested while driving with P.R. Officers detected a strong odor of marijuana in the car. During a field sobriety test, Mother was determined to be under the influence of methamphetamine. She refused to test for drugs. Officers found two "meth pipes" and marijuana in the back seat within reach of P.R., who was not in a child safety seat.

At the jail, Mother spoke to social workers who arrived to collect P.R. She denied driving under the influence or owning the drug pipes. She said officers mistook her nervousness for drug abuse. The children were detained upon Mother's arrest.

The family history with Arizona child protective services dates to 2012, when T.D. was a few months old. Mother left T.D. alone or with strangers when she was at work or out socializing (2012); Mother was arrested for child abuse after leaving T.D. in a hot car in a parking lot for 30 minutes while shoe shopping, causing him to lose consciousness and have to be revived (2014); K.R. tested positive for marijuana at birth and Mother admitted using the drug throughout her pregnancy (2014); Mother engaged in domestic violence in front of the children (2014); Mother left T.D. alone all night with baby K.R. (2014); Mother tested positive for marijuana while pregnant with P.R. (2015); police frequently go to the family home for domestic violence, Father is a registered sex offender who gave Mother a black eye, the parents use drugs, and the children go to a neighbor's home to be fed when they are hungry (2016); K.R. reported that Father "kicked him really hard in the chest . . . smokes marijuana and drinks a lot" and Father pushed the children's grandmother, breaking her leg, while the children were present (2018). Notwithstanding these reports, Arizona did not exert dependency jurisdiction.

DCFS filed a dependency petition. As amended, it alleges that Mother's substance abuse renders her incapable of providing regular care and places the children at risk of serious physical harm; Mother endangered P.R. by driving a vehicle while under the influence, with drugs and paraphernalia near the child; fathers T.R. and H.L. are registered sex offenders, which places the children at risk of serious

harm and sexual abuse; Father and Mother have a history of domestic violence and engage in altercations; and Mother sends messages threatening to kill Father and herself, which endangers the children's physical and emotional health and places them at risk of harm. (§ 300, subds. (b), (d), (j).)

On May 23, 2019, the court found a prima facie case for detaining the children from parental custody. Father was arraigned in July 2019. He denied the petition, was found to be a presumed father, and given monitored visits.

In the jurisdiction report, DCFS had a new child abuse claim regarding the paternal great grandmother (PGGM). P.R. said PGGM hits her; T.D. said PGGM "hits me, my brother, and my sister with a belt" on the back, leg, and arm. The children did not want to live with PGGM.

T.D. was reluctant to talk to DCFS. He denied ever seeing Mother smoke or drink. K.R. refused to be interviewed; PGGM described him as "often angry," "aggressive," and "unkind" to P.R. The social worker saw K.R. hit and push P.R. and heard him say cruel things. P.R. wished to be "with mommy."

Mother was abused as a child by multiple family members and lived in foster care. She uses marijuana for epilepsy and lupus but denies using methamphetamine. She said the drugs and paraphernalia police found in her car belong to a friend who was riding with her; she refused to give the friend's contact information to DCFS. Mother conceded that P.R. was not riding in a child car seat. Misdemeanor drug charges are pending against Mother.

Father is a registered sex offender in Arizona. Mother described him as an "abusive man" who would "sleep with anyone and everyone." She does not worry that Father is a threat to the children despite his sex offender status. Father abused Mother physically and emotionally, telling her that he planned to beat her once he completed his prison term. Upon his release, Father physically abused her to the point that she fled Arizona to escape him. Arizona reported that Father has

engaged in domestic violence since 2000; he assaulted Mother in 2014, 2015, and 2016, when he punched her in the face.

Father grew up in Los Angeles. He was expelled from high school for gang activities and eventually moved to Arizona to be with PGGM and his mother. He told DCFS that Mother smoked "weed" while pregnant with K.R. and P.R. He loves Mother, wants her to come back to Arizona and would leave the mother of his newborn child to be with Mother. Father said Mother threatened to kill herself and the children if she cannot have them back; Mother also threatened to kill Father's newborn, the baby's mother, and Father. Father said Mother formerly used "crystal meth" and heroin, though he is unaware if she still does so. He has been sober for 10 months and has a good job. He has eight children. He accused Mother of kidnapping K.R. and P.R.

H.L. was Father's best friend who was "caught in sexual misconduct with a minor," according to Father. Father does not view H.L. as a threat to P.R. because she is not a teenager. Father claims he had consensual sex in his car with a woman in her twenties who lied that he raped her, leading to his conviction. Arizona's sex offender registry shows H.L. was convicted of sexual conduct with a minor (a "level 2" offense); Father was convicted in 2004 of sexual assault (a "level 3" offense).

PGGM said that Mother's substance abuse led to the children's detention from Mother and Father in Arizona. Mother took classes in Arizona and regained custody but announced her unwillingness to change. Mother often says, "If I can't have my children, then I am going to kill them and then kill myself." PGGM has periodically cared for K.R. since his birth due to the family's dependency history. Paternal relatives accused Mother of being unfit, "doing illegal stuff," and drinking and smoking while pregnant. By contrast, a maternal aunt said Mother was good with the children but Father beat Mother and isolated her from her family.

DCFS reported that it received text messages from Mother to Father, threatening to shoot or stab Father and kill herself. It also had police reports regarding the couple's domestic violence.

6

DCFS assessed the children to be at risk of harm. Mother threatens to kill herself and others; Father wishes to resume his relationship with Mother; and H.L. is a sex offender who cannot have T.D. in his care. Mother told DCFS she is confused about the petition because Father "was the abuser" and "I was the victim." She does not understand how the petition "has anything to do with me and my kids' safety."

At the jurisdiction hearing on August 22, 2019, Father argued that he poses no risk of harm to the children. He has no recent criminal history and DCFS did not show that his sex offender registration relates to children. There is no current risk of domestic violence because he and Mother do not cohabit.

The court sustained the petition against Father, Mother, and H.L. It found that the paternal sex offender registrations are prima facie evidence that the children are at risk. It found that Mother has a history of substance abuse and currently abuses marijuana and methamphetamine, which renders her incapable of providing regular child care and supervision and places them at risk of serious harm; Mother drove a vehicle with P.R. while under the influence and police found drugs and paraphernalia within the child's access; Mother's conduct in endangering P.R. places the child's siblings at risk of harm; Father and H.L. are registered sex offenders, which places the children at risk of harm; Father and Mother engaged in violent altercations; Mother threatened to kill Father and commit suicide, placing the children at risk of harm. (§ 300, subds. (b), (j).) The court found that the children are persons described by section 300 and declared them dependents of the court.

Moving to disposition, the court removed the children from parental custody and allowed monitored visits. Father was ordered to undergo random drug testing; parenting classes; and individual counseling to address case issues, including substance abuse and domestic violence. He appealed the jurisdictional findings, the declaration of dependency, and the children's removal from his custody.

While Father's appeal from the judgment was pending, DCFS reported that Father was ignoring the case plan. He is "frustrated and confused why he is being penalized for his wife's mistakes" and "does not have time nor does he want to complete classes for something he did not do." He "is upset that he has been given a case plan and has been ordered to attend drug testing and parenting classes."

DCFS found programs in Arizona offering counseling, parenting, substance abuse, and domestic violence classes, and advised Father that he could participate in them without coming to California. The case worker "reiterated to [Father] that she wanted to assist [him] with completing his court orders so that he will have a good chance with reunifying with his children." Father wants custody of the children but did not intend to visit them. The DCFS case worker spoke with Father on October 29, November 26, and December 3, 2019, and on January 22, 2020. Father made "minimal efforts towards his court ordered case plans." DCFS and Father's counsel asked to assess Father for placement. The court ordered an interstate compact assessment for Father and authorized him to have monitored telephone visits with the children.

The six-month review was conducted on February 27, 2020. DCFS recommended continued family reunification services for all parents. Father requested custody because "there are no substantial safety risks." He blamed DCFS for not enrolling him in drug testing services and classes.

The court found that DCFS "has done as much as can be reasonably expected" and returning the children to parental custody would pose a substantial detriment; it is appropriate for them to stay in their placements while services continue. Father and Mother are not in substantial compliance with the case plan and were ordered to participate in programs. Father appealed the finding that DCFS provided reasonable services.

8

# DISCUSSION

## *Appeal from a Jurisdictional Finding*[3]

Father contests one of the court's jurisdictional findings. On appeal, we uphold jurisdictional findings if they are supported by substantial evidence. We review the entire record, resolving all conflicts in favor of the respondent and drawing all reasonable inferences in support of the judgment. (*In re R.T.* (2017) 3 Cal.5th 622, 633; *In re Israel T.* (2018) 30 Cal.App.5th 47, 51.)

There are three procedural reasons why Father's appeal of one jurisdictional finding cannot succeed.

First, Mother did not appeal the court's exercise of dependency jurisdiction. This alone requires affirmance. "Because the juvenile court assumes jurisdiction of the child, not the parents, jurisdiction may exist based on the conduct of one parent only." (*In re J.C.* (2014) 233 Cal.App.4th 1, 3.)

Second, Father does not contest the sustained domestic violence count against him. He concedes that the sexual offender count does not affect the court's jurisdiction "based on the counts sustained that are not being challenged." Because Father is an offending parent based on the uncontested domestic violence count, we " 'need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.' " (*In re I.J.* (2013) 56 Cal.4th 766, 773; *D.M. v. Superior Court* (2009) 173 Cal.App.4th 1117, 1127 [jurisdiction "may rest on a single ground"].)

Third, Father did not object to the application of section 355.1.[4] He concedes that "trial counsel did not explicitly oppose application" of section 355.1. He forfeited the issue.

---

[3] Father initially briefed a claim that the court lacks jurisdiction under the Uniform Child Custody and Jurisdiction Act. He recently withdrew the claim so we do not address it.

[4] If the court finds that a parent "is required, as the result of a felony conviction, to register as a sex offender pursuant to Section 290 of the Penal Code, that finding shall be prima facie evidence" that a minor falls within section 300 and "is at substantial risk of abuse or

Father states that his need "to register in Arizona as a sex offender was not disputed." His registration shows he violated Arizona Revised Statutes section 13-1406, which reads, "A person commits sexual assault by intentionally or knowingly engaging in sexual intercourse or oral sexual contact with any person without consent of such person." The crime is equivalent in California to rape (Pen. Code, § 261) or assault with intent to commit rape (*id.*, § 220); violation of either statute requires registration as a sex offender (*id.*, § 290, subd. (c)).

A father may rebut the presumption of a risk of harm from sex offender registration status by showing he is not a risk to his children. (*In re S.R.* (2020) 48 Cal.App.5th 204, 222 [expert witness opined that a father convicted of possessing child pornography posed no risk].) Father opined that he poses no risk and has not committed a new sex crime; Mother is unconcerned that his sexual assault poses a threat to the children. The court found this evidence "insufficient." As trier of witness credibility, the court could disbelieve the parents. (*Id.* at p. 219.)

Even without the presumption, the juvenile court may consider the fact of a sex offense conviction and any reasonable inferences derived from it. (*In re S.R., supra,* 48 Cal.App.5th at p. 222.) In enacting section 355.1, the Legislature found that " ' "children of the State of California are placed at risk when permitted contact with a parent or caretaker who has committed a sex crime." ' " (*In re S.R.,* at p. 222.)

In statements to DCFS, Father showed no remorse for his sexual assault. He blamed the victim, saying she consented to having sex; however, the jury that convicted Father found the victim did not consent. Father's lack of insight into his long history of violence—including a sexual assault—supports the court's finding that he poses a risk to his children.

---

neglect. The prima facie evidence constitutes a presumption affecting the burden of producing evidence." (§ 355.1, subd. (d).)

### *Appeal from Six-month Review Findings*

Father appeals a finding at the review hearing that DCFS provided reasonable reunification services. A parent cannot appeal from a "finding;" only a judgment or "order" is appealable. (*In re S.B.* (2009) 46 Cal.4th 529, 534.) A finding regarding reunification services is challenged by a petition for writ of mandate. (*Melinda K. v. Superior Court* (2004) 116 Cal.App.4th 1147, 1152–1153; but see *In re T.G.* (2010) 188 Cal.App.4th 687, 696 [reasonable services finding that adversely affects parental interest in reunification is appealable].)

In any event, the court's ruling is supported by substantial evidence. (*In re T.G., supra,* 188 Cal.App.4th at p. 695 [standard of review].) In reviewing the reasonableness of the services provided, we view the evidence in the light most favorable to respondent, indulging in all reasonable inferences to uphold the order. (*In re Monica C.* (1995) 31 Cal.App.4th 296, 306.)

The court found Father did not substantially comply with the case plan. Through no fault of DCFS, Father made clear that he feels no responsibility for the sustained allegations. He was "confused why he is being penalized for his wife's mistakes" and said he "does not have time nor does he want to complete classes for something he did not do." He "is upset that he has been given a case plan and has been ordered to attend drug testing and parenting classes."

Father is mistaken about his culpability. T.D. witnessed Father holding a knife against Mother's spine. K.R. reported that Father "kicked him really hard in the chest" in 2018. Arizona authorities documented his violence for nearly two decades, which included breaking his mother's leg and giving Mother a black eye. He had a physical altercation with Mother in 2018 while holding K.R. in his arms.

The court could reasonably find that Father's failure to begin services stems from his reluctance to take responsibility for his conduct, not from any failure on the part of DCFS. The social worker offered Father programs in Arizona, but he made no effort to participate, nor did he avail himself of his visitation rights or request

11

telephonic visits.  Services cannot be forced on an unwilling parent.  (*In re Nolan W.* (2009) 45 Cal.4th 1217, 1233; *In re Christina L.* (1992) 3 Cal.App.4th 404, 414.)

## DISPOSITION

The orders are affirmed.

NOT TO BE PUBLISHED.

LUI, P. J.

We concur:

ASHMANN-GERST, J.

HOFFSTADT,J.

12