Filed 4/26/21  In re Ivan F. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re IVAN F., et al., | B308207 |
| Persons Coming Under the Juvenile Court Law. | (Los Angeles County Super. Ct. No. 20CCJP02462) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ADRIAN F.,<br><br>Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stephen C. Marpet, Judge Pro Tempore. Affirmed.

Linda B. Puertas, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and David Michael Miller, Deputy County Counsel, for Plaintiff and Respondent.

_____

Adrian F. (Father) appeals from the juvenile court's assertion of jurisdiction over his two sons, Ivan F. and Miguel F. (collectively, the children), under Welfare and Institutions Code[1] section 300, subdivision (b)(2), as well as the subsequent dispositional order removing both children from Father and ordering Father to complete reunification services. The juvenile court found that Father's history of alcohol and substance abuse problems created a substantial risk of serious physical or emotional harm to the children, and that Father needed to complete a series of drug treatment programs to reunify with the children. Father denies any present or prior history of alcohol or substance abuse, and contends the evidence is insufficient to support these findings. Father also argues that the removal order should be vacated, claiming that the juvenile court removed the children pursuant to a statute that does not apply to Father as a noncustodial parent. Finally, Father challenges the order compelling him to attend a drug treatment program.

We affirm the juvenile court's orders. The record provides ample support for the juvenile court's finding that Father had a history of untreated alcohol and substance abuse problems dating

_____

[1] Subsequent undesignated statutory citations are to the Welfare and Institutions Code.

2

back to 2014. Accordingly, we find that both the jurisdictional finding and the order for drug treatment services were proper. We also affirm the removal order as to Father, a noncustodial parent who did not seek custody of the children, which the juvenile court properly issued pursuant to section 361, subdivision (d).

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Family

Father had two sons with Karla S. (Mother). Ivan was born in 2002,[2] and Miguel in 2009. Father and Mother's relationship ended in or around 2013.

Mother subsequently met and married Aaron C. (Stepfather), who lived with Mother and the children.[3] By 2020, Father had not had contact with the children for at least one year.

### B. Initial Petition for Jurisdiction as to Mother and Stepfather

On March 23, 2020, the Department of Child and Family Services (Department) received a report of ongoing domestic violence between Mother and Stepfather. During a particularly volatile incident, Mother claimed that Stepfather attempted to strangle her with a cord in front of 10-year-old Miguel. Ivan

---

[2] Ivan turned 18 in December of 2020. However, since the juvenile court properly took jurisdiction over Ivan before he reached the age of 18, it may retain jurisdiction until he is 21 years old. (§ 303, subd. (a).)

[3] Mother and Stepfather had one child, Felix C. Stepfather's son N.C. also lives with the family. These children are not party to this appeal.

3

stated that this kind of physical violence had been going on "since [he] c[ould] remember," and that he regularly intervened in fights between Mother and Stepfather. Although Mother obtained a restraining order against Stepfather, he continued to live in the home.

On May 1, 2020, the Department filed a section 300 petition alleging jurisdiction over Ivan, Miguel, and their half-brother Felix on two counts.[4] Count a-1 alleged that Mother and Stepfather's pattern of serious domestic violence created a substantial risk that one or both of them would non-accidentally injure one of the children. Count b-1 alleged that the domestic violence also threatened to harm the children by affecting Mother and Stepfather's ability to adequately supervise and protect them. The juvenile court sustained the petition on both counts. Father did not attend the jurisdictional hearing, but his appointed counsel attended and asked that he be referred for services.

## C. The First Amended Petition for Jurisdiction as to Father

Father spoke with a social worker for the first time one day before the initial jurisdiction hearing. Father denied any criminal history or history of alcohol abuse, but freely admitted that "he ha[d] been smoking crystal meth[amphetamine] for approximately three years on a weekly basis." He stated that his last use had been one week before the interview. He told the social worker that "he could not currently care for the children," but that he was willing to submit to drug testing and a treatment program "in order to reunify" with the children.

---

[4] Stepbrother N.C. was not named in these proceedings.

4

The Department later discovered that Father had been convicted of driving under the influence of alcohol (DUI) in 2014, and subsequently was convicted of driving with a license that had been suspended due to a DUI conviction. In addition, he had a current warrant for his arrest relating to a DUI offense from 2018. Father had not completed an alcohol or drug treatment program following the DUI conviction. Although Father tested negative for all narcotics in a drug test on August 20, 2020, he failed to present himself for testing on August 26, 2020.

On August 13, 2020, the Department filed an amended section 300 petition. In addition to the prior two counts concerning the domestic violence between Mother and Stepfather, the amended petition alleged jurisdiction over Ivan and Miguel pursuant to section 300, subdivision (b)(1), based on Father's substance abuse. Count b-2 alleged that Father "has a history of substance abuse including methamphetamine and alcohol," and that he "is a current user of amphetamine and methamphetamine, which renders . . . [F]ather incapable of providing regular care of the children," and put the children at risk of serious physical harm.

On August 19, 2020, the Department again interviewed Father. He recanted his prior statements regarding methamphetamine use, and denied any substance abuse problems. Additionally, he now resisted the suggestion that he participate in a drug treatment program. Father repeatedly insisted that the children be returned to Mother's care, opining that the domestic violence issues between Mother and Stepfather did not impact the children.

**D.    Jurisdictional and Dispositional Hearing**

On September 22, 2020, the juvenile court held a combined jurisdictional and dispositional hearing to consider the allegations in the first amended petition.  During the hearing, Father's counsel denied he had any substance abuse issues, and argued that even if the juvenile court found that he had used substances, his use did not rise to the level of substance abuse warranting dependency jurisdiction under section 300.  Father's counsel also argued that since he was a noncustodial parent, the Department could not demonstrate any nexus of harm to the children.

The juvenile court declined to find that Father's current drug use created a present risk of harm to the children because he "doesn't live with these children," and his contact with the children "has not been that consistent."  The court amended count b-2 and found that Father's history of alcohol and substance abuse put the children at risk of serious physical harm.

Father asked the juvenile court to issue a dispositional order requiring that he participate in random drug testing, with treatment programs to follow only if he tested positive or missed a test.  Father's counsel admitted that Father had missed one drug test, but maintained that "[h]e is trying to comply with the testing requirement."  The juvenile court denied Father's request, emphasizing his failure to complete any treatment programs for the prior DUI conviction, as well as the need to "mak[e] sure that [Father]'s sober."

The juvenile court sustained all allegations in the first amended petition, and asserted jurisdiction over Ivan and Miguel under Section 300, subdivisions (a)(1) and (b)(1).  The juvenile court found by clear and convincing evidence that removal of the

children from both Mother and Father was necessary.  The children were placed with their maternal grandmother.  Lastly, the juvenile court ordered Father to participate in drug counseling, random drug testing, Alcoholics Anonymous and Narcotics Anonymous meetings, and individual counseling.

Father timely appealed.

## DISCUSSION

### A.     Appellate Jurisdiction

Father alone appeals the jurisdictional and dispositional orders issued in this case.  The failure of both parents to appeal a finding of jurisdiction requires that we ensure appellate review is appropriate.

Dependency jurisdiction under section 300 is over the *child*, not *the parents*, as a result of the harm or risk of harm the child faces.  (See, e.g., *Kern County Dept. of Human Services v. Superior Court* (2010) 187 Cal.App.4th 302, 310.)  Because the juvenile court assumes jurisdiction over the child, not over the parents, jurisdiction may exist based on the conduct of one parent alone.  (See § 302, subd. (a); *In re John S.* (2001) 88 Cal.App.4th 1140, 1143.)  "For this reason, an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence."  (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1492.)

However, we may exercise our discretion and reach the merits of a single parent's challenge to any jurisdictional finding when the finding (1) serves as the basis for dispositional orders that are also challenged on appeal (see, e.g., *In re Alexis E.* (2009) 171 Cal.App.4th 438, 454), (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings (see, e.g., *In re D.C.* (2011) 195

7

Cal.App.4th 1010, 1015; see also *In re I.A.*, *supra*, 201 Cal.App.4th at p. 1494), or (3) "could have other consequences for [the appellant], beyond jurisdiction." (*In re I.A.*, *supra*, at p. 1493.)

We exercise our discretion to reach the merits of Father's appeal for two reasons. First, the Department does not challenge Father's appeal of dependency jurisdiction over the children by citing Mother's failure to join, but, instead, defends jurisdiction on the merits. Second, the outcome of this appeal is the difference between Father being an "offending" parent versus a "non-offending" parent. Such a distinction may have far reaching implications with respect to future dependency proceedings in this case and Father's parental rights. We have exercised our discretion to reach the merits of a single-parent appeal for this reason before, and we do so here. (See, e.g., *In re Quentin H.* (2014) 230 Cal.App.4th 608, 613.)

**B.** **Substantial Evidence Supports Dependency Jurisdiction over the Children**

1. *Applicable Law and Standard of Review*

"Section 300, subdivision (b), allows a child to be adjudged a dependent of the juvenile court when '[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's . . . substance abuse.' " (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1215; see § 300, subd. (b)(1).)

"[T]here are three elements for jurisdiction under section 300, subdivision (b), namely, (1) neglectful conduct or substance

8

abuse by a parent in one of the specified forms, (2) causation, and (3) serious physical harm to the child, or a substantial risk of such harm." (*In re Rebecca C.* (2014) 228 Cal.App.4th 720, 724-725.)

In deciding whether there is a substantial risk of serious physical harm, courts evaluate the risk that is present at the time of the jurisdiction hearing. (*In re Christopher R., supra*, 225 Cal.App.4th at pp. 1215-1216.) "While evidence of past conduct may be probative of current conditions, the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824.) Thus, "[a] parent's ' "[p]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will continue.' [Citation]." (*In re Christopher R., supra*, 225 Cal.App.4th at p. 1216.)

We review the trial court's jurisdictional findings for substantial evidence. (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1022.) Under this standard, " 'we must uphold the . . . [jurisdictional] findings unless, after reviewing the entire record and resolving all conflicts in favor of the respondent and drawing all reasonable inferences in support of the judgment, we determine there is no substantial evidence to support [them].' " (*Ibid.*)

2.    *Discussion*

Father raises two challenges to the juvenile court's order taking jurisdiction over the children. First, he argues the order is facially invalid because the juvenile court did not make the findings required to exercise dependency jurisdiction under section 300, subdivision (b), namely that Father's substance abuse created a *substantial* risk of *physical* harm to the children.

9

Second, he argues that the juvenile court's finding that he had a substance abuse problem is not supported by substantial evidence.

Father's facial challenge is not supported by the record. The juvenile court sustained the first amended petition, which explicitly incorporates the required language, stating that "there is a *substantial* risk that the child[ren] will suffer *serious* physical harm" as a result of the "inability of the parent . . . to provide regular care for the child[ren] due to the parent's . . . substance abuse." (Italics added.) (Cf. *In re Israel T.* (2018) 30 Cal.App.5th 47, 50 [vacating a jurisdictional order in which the juvenile court amended the § 300 petition to strike the word " 'substantial' " (preceding " 'risk' ") and " 'serious' " (preceding " 'physical harm' ")].)

Father's substantive arguments also lack merit. It is true that dependency jurisdiction "must be based on substance *abuse*; mere substance *use* is not sufficient for jurisdiction. [Citation.] However, the law is not in agreement on when substance use reaches the point of substance abuse." (*In re J.A.* (2020) 47 Cal.App.5th 1036, 1046, citing *In re Drake M.* (2012) 211 Cal.App.4th 754, 764.) Despite this lack of agreement, as we explain, the facts support the juvenile court's assertion of jurisdiction over the children based on Father's admitted methamphetamine use, prior DUI conviction, and pending DUI charge.

Father freely admitted to a social worker that he had smoked methamphetamine every week for three years, and had done so as recently as one week prior to the initial interview. This longstanding and regular drug use alone provides substantial evidence to support the trial court's finding of

10

substance abuse.  (See *In re Christopher R., supra,* 225 Cal.App.4th at p. 1218 [finding the mother's repeated use of cocaine, including while she was pregnant, was indicative of substance abuse]; cf. *In re L.C.* (2019) 38 Cal.App.5th 646, 652 [evidence that the parent used methamphetamine seven times during a period of 10 months is insufficient to support allegations of substance abuse].)  This conclusion is further supported by Father's failure to report for a drug test on August 26, 2020. (*Christopher R.*, *supra*, at p. 1217 [a missed drug test is "properly considered the equivalent of a positive test"].)

Even if the juvenile court had credited Father's recantation of current methamphetamine use and excused his missed drug test, it still found that, at a minimum, Father's history of untreated alcohol and substance abuse presented a substantial risk to the physical and emotional health of the children.  In addition to his admission of prior methamphetamine use, Father was convicted of DUI in the previous five years.  The court noted that Father did not appear to have ever completed a substance abuse program related to this conviction.  Father also had a current warrant for his arrest for a DUI incident that occurred two years before the jurisdictional hearing.  His longstanding use of illegal drugs and history of alcohol related driving offenses is indicative of a substance abuse problem.  (See *In re Drake M.*, *supra*, 211 Cal.App.4th at p. 766 [providing non-exclusive criteria to distinguish substance "abuse" from substance "use," including "recurrent substance-related legal problems."].)

Despite a finding of parental substance abuse, "it does not always follow that such a finding means that the parent or guardian at issue is unable to provide regular care resulting in a substantial risk of physical harm to the child."  (*In re Drake M.*,

11

*supra*, 211 Cal.App.4th at p. 766.)  A juvenile court also must find that the parent's substance abuse would cause a substantial risk of physical harm to the children.  (*In re Rebecca C.*, *supra*, 228 Cal.App.4th at pp. 724-725.)

Additional evidence supports the juvenile court's finding that Father's substance abuse gave rise to a substantial risk of harm to the children.  Father initially claimed to appreciate the risks posed by his substance abuse, readily agreeing to participate in treatment programs to reunite with his children.  However, he never followed through on this commitment.  Instead, he quickly became resistant to the idea of any treatment, denying any past or present substance abuse issues and arguing that he should not be required to attend any kind of sobriety support program.  The juvenile court could reasonably conclude that Father's failure to acknowledge the need for treatment created a substantial risk of physical harm to the children.  (*In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge"]; see also *In re R.R.* (2010) 187 Cal.App.4th 1264, 1284 [finding a substantial risk of physical harm by exposing the child to the parent's substance abuse, " 'thus impliedly approving such conduct and even encouraging [the child] to believe that it is an appropriate or necessary means of coping with life's difficulties' "].)

We therefore affirm the juvenile court's finding of jurisdiction under section 300, subdivision (b)(1), as to Father in count b-2.

12

**C.** **The Juvenile Court Properly Removed the Children from Father**

1. *Applicable Law and Standard of Review*

After reaching its decision to remove the children from Mother, the custodial parent, the juvenile court next turned to consider whether the children should be removed from Father, the noncustodial parent.  (See § 361, subds. (c) and (d).)  To remove a child from a noncustodial parent who is not seeking custody, the juvenile court must find by clear and convincing evidence "that there would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the child for the parent . . . to live with the child or otherwise exercise the parent's . . . right to physical custody, and there are no reasonable means by which the child's physical and emotional health can be protected without removing the child." (§ 361, subd. (d).)

The clear and convincing evidence standard " 'requires a finding of high probability.  The evidence must be so clear as to leave no substantial doubt.' " (*In re V.L.* (2020) 54 Cal.App.5th 147, 154.)  " '[W]hen reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true.  Consistent with well-established principles governing review for sufficiency of the evidence, in making this assessment the appellate court must view the record in the light most favorable to the prevailing party below and give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the

13

evidence.' " (*Id.* at p. 155 [applying the standard of review articulated in conservatorship matters to a dependency proceeding], quoting *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995-996.)

2.    *Discussion*

Father argues the juvenile court incorrectly removed the children from him pursuant to section 361. He contends that, because he is a noncustodial parent, the court should have applied section 361.2, which encourages placement with the noncustodial parent unless it would be detrimental to the safety, protection, or physical or emotional health of the child.

We disagree. Section 361.2 applies to noncustodial parents who request custody of their children. (§ 361.2, subd. (a) [after removal from a custodial parent, "the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. *If that parent requests custody*, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child"], italics added.) Here, Father did not request custody of the children at any time. During his first interview with social workers, he briefly demonstrated a willingness to "reunify" with the children. However, reuniting with a child is distinct from seeking legal or physical custody. (*In re Liam L. (*2015) 240 Cal.App.4th 1068, 1083 [distinguishing between a noncustodial father's efforts to reunite with his children and an actual request for custody].) Moreover, at that same interview, Father admitted that he was presently unable to "care for the children."

14

During his last interview before the jurisdictional and dispositional hearing, Father did not request custody of the children, instead advocating for the children to be returned to Mother—despite his knowledge of the serious domestic violence present when the children were in Mother's care. Most tellingly, Father never requested custody at the removal hearing. Nor did he ask the juvenile court to find, in accordance with section 361.2, that a noncustodial parent "desire[d] to assume custody of the child." Instead, when Father asked to be heard on the subject of removal, Father's counsel only objected to the requirement that Father participate in treatment programs.[5]

Additionally, Father's analysis of section 361 primarily relies on case law that predates the addition of section 361, subdivision (d), which applies to noncustodial parents that do not seek custody of their children. The juvenile court's removal order shows that the children were correctly removed from Father pursuant to this subdivision.

Father also argues the juvenile court erred in failing to state the factual basis for removal. We agree. Section 361 unequivocally requires that "[t]he court shall state the facts on

_____

[5] Father criticizes the juvenile court's failure to ask whether he wanted to take custody of the children. However, Father does not provide any legal support for the proposition that the juvenile court bears the burden of prompting a noncustodial parent to request custody. (*Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545 ["[I]t is established that '. . . an appellate brief "should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration" ' "].)

which the decision to remove the minor is based." (§ 361, subd. (e).) The juvenile court's error, however, does not warrant reversal. Any error by the juvenile court in failing to state its findings was harmless. (*In re Jason L.* (1990) 222 Cal.App.3d 1206, 1218 [failure to make required findings under § 361, subd. (e) are deemed harmless if " 'it is not reasonably probable such finding, if made, would have been in favor of continued parental custody' "].) We find it improbable that the juvenile court would have made a different decision on the question of removal, even if it had made the required factual findings, given Father's failure to seek custody and his resistance to acknowledging his substance abuse issues. (See *In re A.F.* (2016) 3 Cal.App.5th 283, 293 [affirming removal order due to the mother's failure to acknowledge her longstanding drug abuse problem and "the risks to which she was exposing the minor"]; *In re J.C.* (2014) 233 Cal.App.4th 1, 6-7 [affirming removal notwithstanding the father's participation in treatment where his treatment provider reported his participation was " 'sluggish,' " he missed two drug tests, and had a long history of substance abuse].)

## D. The Juvenile Court Properly Ordered Services for Father

Lastly, Father claims that he should not have been ordered to complete drug treatment programs. Father's argument primarily relies on his assertion that any allegations of substance abuse were unsupported by the record. Since we find the allegations are substantially supported by Father's own admissions, missed drug test, and criminal history, we reject this argument.

Father also argues that the order was not reasonably designed to correct the main threat to the children, namely

Mother and Stepfather's domestic violence.  However, the juvenile court has " 'broad discretion' " to fashion dispositional orders that " 'serve and protect the child[ren]'s interests,' " not just those interests that one parent considers important.  (*In re D.P.* (2020) 44 Cal.App.5th 1058, 1071.)  Because Father's unresolved drug and alcohol abuse substantially impacted his ability to care for the children, the juvenile court did not abuse its discretion in ordering Father to participate in these programs.

## DISPOSITION

The order is affirmed.
NOT TO BE PUBLISHED

FEDERMAN, J.*

We concur:

CHANEY, J.

BENDIX, Acting P. J.

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.